[Nos. 18173–4–I; 19827–1–I.   Division One.   January 25, 1988.]

DeeAnn S. Burman, *Appellant,* v. The State of Washington, et al, *Respondents.*

DeeAnn S. Burman, *Respondent,* v. The State of Washington, *Appellant.*

*Ramer B. Holtan, Eugene C. Chellis,* and *Perkins Coie,* for Burman.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. McCartan, Assistant; Norm Maleng, Prosecuting Attorney,* and *Fred A. Kaseburg, Deputy,* for State, et al.

SCHUMACHER, J.*—DeeAnn Burman appeals the trial court's order dismissing her due process claims against

---

*Judge John W. Schumacher is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Shoreline District Court and the State of Washington. The State appeals the trial court's denial of its motion for review of a special master's decision denying release of the State from the lawsuit. Shoreline appeals the trial court's denial of its request for costs.

FACTS

On October 3, 1981, Burman was cited for driving a vehicle with expired license tabs. Burman failed to respond to the infraction notice by either timely paying the $37 fine, or requesting a trial or a mitigation hearing. Shoreline District Court imposed an additional fee of $47 ($25 late penalty plus assessments) and forwarded a notice of failure to appear to the Department of Licensing (hereinafter DOL).

Burman paid the $37 fine by check on October 15, 1981 (3 days late). In November 1981, Burman attempted to renew her driver's license and was informed that she was first required to pay the additional $47. Burman sent a letter to Shoreline requesting a mitigation hearing concerning both the infraction and the imposition of the $47 additional penalty.

Apparently, Burman received no response from Shoreline to her hearing request, and ultimately paid the additional $47 in March 1982. Burman was subsequently told by court personnel that she would not receive any type of hearing because Shoreline believed it lacked authority to change the amount of the penalty.

Burman filed a lawsuit in King County Superior Court, naming the State of Washington, Shoreline District Court and its clerk, John Gonsalez, Director of DOL, and Joe Taller, Director of the Office of Fiscal Management, as defendants, on July 2, 1982.

Burman's complaint listed several causes of action: (1) that Shoreline collected a late penalty in excess of that permitted; (2) that Burman was deprived of her property without due process; (3) that the $47 penalty was excessive for a short delay in payment; and (4) that the conduct complained of constituted conversion.

436

Burman prayed for the following relief: (1) monetary damages; (2) a declaratory judgment stating that $25 is the maximum allowable late penalty, and declaring that due process requires that an individual have a reasonable opportunity to contest the imposition of the late penalty; (3) injunctive relief; (4) a writ of mandamus directing the defendants to reimburse the plaintiff and refrain from imposing the late penalty without a hearing; and (5) costs and attorney's fees.

In 1982, the Legislature amended RCW 46.63.110(3)[1] to provide that the $25 late penalty is not subject to statutory assessments. Laws of 1982, 1st Ex. Sess., ch. 12, § 1, p. 1043. In October 1982, the trial court granted partial summary judgment in Burman's favor and held that the statutory assessments (criminal justice training assessment, traffic safety education assessment, general fund fee) were not applicable to the $25 late penalty, and that the total late penalty that could be imposed pursuant to RCW 46.63.070(5)(a)[2] or RCW 46.63.110(3) was $25.

In September 1983, Burman's lawsuit was certified as a class action, with the class defined as those persons who

---

[1]RCW 46.63.110(3) now reads:

"There shall be a penalty of twenty–five dollars for failure to respond to a notice of traffic infraction except where the infraction relates to parking as defined by local law, ordinance, regulation, or resolution or failure to pay a monetary penalty imposed pursuant to this chapter. A local legislative body may set a monetary penalty not to exceed twenty–five dollars for failure to respond to a notice of traffic infraction relating to parking as defined by local law, ordinance, regulation, or resolution. The local court, whether a municipal, police, or district court, shall impose the monetary penalty set by the local legislative body."

[2]RCW 46.63.070(5)(a) reads as follows:

"If any person issued a notice of traffic infraction:

"(i) Fails to respond to the notice of traffic infraction as provided in subsection (2) of this section; or:

"(ii) Fails to appear at a hearing requested pursuant to subsection (3) or (4) of this section;

"the court shall enter an appropriate order assessing the monetary penalty prescribed for the traffic infraction and any other penalty authorized by this chapter and shall notify the department in accordance with RCW 46.20.270, of the failure to respond to the notice of infraction or to appear at a requested hearing."

either in the past were required or in the future would be required to pay a late penalty for failure to respond to a notice of traffic infraction or to pay a monetary fee for a traffic infraction.

In October 1983, the trial court granted partial summary judgment for Shoreline against the State of Washington, finding that the State was liable for any refund of amounts collected by Shoreline and remitted to the State Treasurer.

Burman and the State negotiated a settlement obligating the Legislature to appropriate $1.2 million to pay late penalty refunds. This settlement agreement limited its own scope as follows:

F. Scope of Settlement

. . .

3. Release of refund claims against the state. This agreement, when approved by the court, will constitute a final settlement and release of all refund or restitution claims in this action against all state defendants, on behalf of all members of the plaintiff overcharge subclass with respect to all infractions for which FTAs are on file at the DOL batched from January 1, 1981 to September 1, 1982.

4. Remaining claims. All claims on due process issues and all claims against the Shoreline defendants are expressly reserved and are not affected by this agreement. Members of the plaintiff class also retain any claims against any county, city or other local entity on any issues other than improper collection of assessments on traffic infraction late penalties.

The trial court approved the negotiated settlement on October 29, 1985.

In September 1985, the trial court heard Burman's motion for summary judgment on the due process issues, seeking declaratory and injunctive relief. Because Shoreline stated that it was ready to implement any due process rights that the courts might establish, it argued that injunctive relief was unnecessary. Shoreline filed a cross motion for summary judgment, claiming that there was no justiciable controversy, that the statutory procedures were

constitutional, and that adequate remedies already existed under the law.

The State filed no documents on its own behalf in opposition to Burman's motion, apparently believing as a result of the settlement negotiations that it had been released on the due process claims. The trial court dismissed Burman's cause of action against Shoreline on the due process issues, granting Shoreline's cross motion on February 24, 1986.

Burman filed a notice of appeal (cause 18173–4–I) in this court on March 24, 1986, naming both Shoreline and the State as respondents. After Burman filed her appellant's brief, the State filed a motion to dismiss itself from the appeal, claiming that the trial court's order failed to include the State, and claiming that the settlement agreement released the State on the due process issues.

The commissioner's ruling dated October 8, 1986 indicated that the State's motion to dismiss would be granted if this court did not receive a copy of an order from the trial court below indicating that at the time of summary judgment, the State was still a party in the lawsuit, and that the absence of any reference to the State in the summary judgment order was inadvertent. Such an order was filed in this court on November 21, 1986.

Nonetheless, the amended commissioner's ruling, dated November 4, 1986, indicates that the parties agreed to arbitrate the issue of whether due process claims against the State were released by the settlement agreement.

At the arbitration hearing, although the State argued that its counsel's understanding was that the State's agreement to pay the refunds was in exchange for release from the due process issues, the special master ruled that extrinsic evidence was irrelevant due to the document's integration and to the plain meaning of the settlement agreement. The special master determined that Burman had reserved the due process claims against all defendants, including the State. On December 16, 1986, the trial court denied the State's motion for review of the special master's ruling.

The State appealed the trial court's decision on this issue, and the appeal was consolidated with Burman's appeal now before this court.

DECLARATORY JUDGMENT AND DUE PROCESS ISSUES

Shoreline argues that the case before us does not present a justiciable controversy. To enable a trial court to assume jurisdiction and render a declaratory judgment, it must be presented with a justiciable controversy. *Northwest Greyhound Kennel Ass'n v. State,* 8 Wn. App. 314, 506 P.2d 878 (1973). A justiciable controversy requires that parties have existing and genuine, not theoretical, rights or interests. The controversy must be one upon which the judgment of the court may effectively operate. A justiciable controversy is one in which the judicial determination will have the force and effect of a final judgment in law or be of great and overriding public interest. Finally, the proceedings must be genuinely adversarial in nature. *State ex rel. O'Connell v. Dubuque,* 68 Wn.2d 553, 558, 413 P.2d 972 (1966).

In addition to the requirements listed above, a case which is moot does not meet the test of justiciability. A case is moot if the court's resolution of the issue will not affect the rights of the litigants before the court. *See Sosna v. Iowa,* 419 U.S. 393, 42 L. Ed. 2d 532, 95 S. Ct. 553 (1975). However, an issue is not deemed moot if it is "capable of repetition, yet evading review". *Southern Pac. Terminal Co. v. Interstate Commerce Comm'n,* 219 U.S. 498, 515, 55 L. Ed. 310, 31 S. Ct. 279 (1911). In the case before us, the due process issues are moot as to Burman because she has conceded that the late penalty was properly applied to her. However, mootness as to the representative in a class action does not necessarily mean that the case itself is moot as to the class. *Sosna v. Iowa, supra.*

In *Sosna,* a challenge was brought in the federal courts to the constitutionality of a state divorce law's 1–year residency requirement. After the case was properly certified as a class action, the named plaintiff satisfied the residency

requirement. By the time the case came before the Supreme Court, therefore, the named plaintiff's claim was moot. The Court concluded that, for the class as a whole, the issue was capable of repetition yet evading review, and therefore not moot. *Sosna,* at 401.

The Court held that as long as the named plaintiff had a live claim at the time the suit was filed and at the time the trial court certified the class, mootness as to the named plaintiff is not a bar to considering the case on its merits as to the class. *Sosna,* at 402. Although the factual circumstances here are distinguishable from those in *Sosna* in that Burman's case is moot because of both the settlement and her later admission concerning the late penalty, we find the case is not moot as to the class.

Having determined that the due process questions were properly before the trial court, the substance of Burman's claim can be considered. The fourteenth amendment to the United States Constitution provides in part that no "state [shall] deprive any person of life, liberty, or property, without due process of law . . ." Article 1, section 3 of the Washington State Constitution likewise provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law."

■ Due process requires notice and opportunity for hearing appropriate to the nature of the case. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950). The procedural safeguards afforded in each situation should be tailored to the specific function to be served in a given case. *See Goldberg v. Kelly,* 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970). Consideration must also be given to the nature of the interest affected, the manner in which the procedure was done, the reasons for doing it, the available alternatives to the procedure that was followed, and a balance between the injury complained of and the good accomplished. *See Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 149, 95 L. Ed. 817, 71 S. Ct. 624 (1951) (Frankfurter, J., concurring).

The procedure at issue here concerns the imposition of a late penalty on an unpaid traffic infraction fine. The citation itself contains a notice that failure to respond to the notice of traffic infraction (NTI) either by paying the fine, or requesting a hearing, will result in the imposition of the late penalty. *See* RCW 46.63.110(3).[3]

Under JTIR 2.4(a), a person must respond within 7 days of the date of the NTI. Under JTIR 2.5, if a defendant fails to respond to an NTI, it is mandatory that the court find that the defendant has committed the infraction, and it is mandatory that any monetary penalties provided by law be assessed and that DOL be notified of the defendant's failure to respond. Once DOL receives a notice of failure to respond and the appropriate monetary penalty, it sends out a notice to the individual that they have an outstanding traffic ticket.

█ Burman argues that there is no opportunity for an individual to contest the imposition of the late penalty, and she further argues that the notice of the imposition of the penalty is inadequate. However, we disagree and find that the notice is adequate. The notice required pursuant to due process is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action . . ." *Mullane,* at 314. The notice contained on the reverse side of the citation states that "[f]ailure to respond *will* carry an additional monetary penalty . . ." (Italics ours.) This notice, combined with the information contained in RCW 46.63.110(3), apprises the individual of the mandatory nature of the late penalty. Thus, we hold that the notice afforded a traffic offender comports with due process.

Burman also argues that no procedure exists for contesting the imposition of the late penalty. She is correct that the penalty is imposed without a prior hearing. Burman

[3]RCW 46.63.110(3) reads in pertinent part:

"There shall be a penalty of twenty–five dollars for failure to respond to a notice of traffic infraction . . ."

concedes that a hearing is not required *prior* to the imposition of the penalty. JTIR 5.1, governing appeals, does not provide for an appeal of a late penalty. A defendant may only appeal a judgment entered after a contested hearing finding that the infraction has been committed. However, under JCR 60,[4] a defendant may apply to the court for relief from judgment or order for either correction of clerical mistakes or for a variety of other reasons. In addition, it is possible for a defendant to apply to the superior court for a writ of certiorari or review. Should these remedies prove

---

[4]JCR 60 provides in part:

"**(a) Clerical Mistakes.** Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. Such mistakes may be so corrected before review is accepted by an appellate court, and thereafter may be corrected pursuant to RALJ 4.1(b).

"**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

"(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

"(2) For erroneous proceedings against a minor or person of unsound mind, when the condition of such defendant does not appear in the record, nor the error in the proceedings;

"(3) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b);

"(4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

"(5) The judgment is void;

"(6) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;

"(7) If the defendant was served by publication, relief may be granted as prescribed in RCW 4.28.200;

"(8) Death of one of the parties before the judgment in the action;

"(9) Unavoidable casualty or misfortune preventing the party from prosecuting or defending;

"(10) Error in judgment shown by a minor, within 12 months after arriving at full age; or

"(11) Any other reason justifying relief from the operation of the judgment."

inadequate, civil litigation against the State for an over-charge could be instituted, as was done here with respect to the statutory assessments.

The only individuals who might possibly have a due process claim are those to whom the late penalty is applied wrongfully; that is, those individuals who responded to the notice of infraction in a timely manner, but for some reason were not credited with having done so. In essence, this would constitute a technical or clerical error. Thus, in addition to the procedures outlined above, the individual would have the opportunity of informal process to enable the courts or the DOL to correct their clerical error. Given that the significance of the property interest ($25) is relatively small and, likewise, the class of individuals affected is also small (those victims of a clerical error), we find that the procedures for vacation of a judgment, writ of certiorari or informal resolution comport with due process.

Burman argues that the property interest is more significant, in that the individual who fails to pay a late penalty cannot renew his or her driver's license. However, an individual does receive notice from DOL of the unpaid fine, and it would be the rare person whose license renewal time occurred at the same time as the late penalty was incurred. Thus, the number of individuals who would be affected in this way would be extremely small. Therefore, on balance we hold that the procedures already in place adequately provide individuals with notice and an opportunity to be heard, and we affirm the dismissal of Burman's due process claims.

### WRIT OF CERTIORARI

Burman contends that her claim for a writ of certiorari should not have been dismissed by the trial court.

RCW 7.16.030 states that "[t]he writ of certiorari may be denominated the writ of review." Former RCW 7.16.040 reads in pertinent part:

> Grounds for granting writ. A writ of review shall be granted by any court, except a police or justice court,

when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.

The writ of review orders the party to whom it is directed to certify a transcript of the record and proceedings in order that the court issuing the writ might review them. *See* RCW 7.16.070. After hearing the parties, the reviewing court may give judgment, either affirming or annulling or modifying the proceedings below. *See* RCW 7.16.110.

█ Burman's complaint did seek, in the alternative, a writ of certiorari, using the required form. It does not appear in the record that the trial court ever formally granted the writ. It would also appear that Burman's case was appropriate for a writ of certiorari, given that only the outcome of contested hearings concerning NTI's may be appealed. However, any error committed by the trial court is harmless, because the trial court heard Burman's case on the merits. That is, she received the same relief that she would have obtained through the granting of a writ. There is no reversible error here.

### Costs

Shoreline argues that the State was found to be the responsible party regarding the overcharges, such that no final judgment was ever obtained against Shoreline. Shoreline also argues that it was the prevailing party on the due process issues, and was thus entitled to costs pursuant to RCW 4.84.030.

█ RCW 4.84.030 reads as follows:

Prevailing party to recover costs. In any action in the superior court of Washington the prevailing party shall be entitled to his costs and disbursements; but the plaintiff shall in no case be entitled to costs taxed as attorneys' fees in actions within the jurisdiction of a justice of the peace when commenced in the superior court.

The prevailing party for purposes of RCW 4.84.030 is the party who receives a judgment in his favor. *Yakima Adj. Serv. v. Durand,* 28 Wn. App. 180, 622 P.2d 408 (1981). Although such a judgment need not include the entire amount sought by the party, the judgment must be one rendered in the party's favor at the conclusion of the entire case. *Stott v. Cervantes,* 23 Wn. App. 346, 595 P.2d 563 (1979).

Shoreline correctly argues that the State was found liable for any refunds due Burman and the other class members and, therefore, no judgment was entered against Shoreline concerning the refunds. In addition, Shoreline also correctly argues that it received a judgment in its favor on the due process issues. We hold that the trial court erred in denying costs to Shoreline as the prevailing party, and therefore direct the trial court to order Burman to pay Shoreline's costs.

Because we affirm the dismissal of Burman's lawsuit, we need not address Shoreline's contention that it is not an appropriate party against which to litigate due process issues. Similarly, we also do not reach the question of whether the State was released from this lawsuit by the settlement agreement between Burman and the State.

The judgment of the trial court is affirmed with respect to Burman's due process claims, and the case is remanded to the trial court with instructions to order Burman to pay Shoreline's litigation costs.

SCHOLFIELD, C.J., and SWANSON, J., concur.

Reconsideration denied March 15, 1988.

Review denied by Supreme Court May 31, 1988.