[No. 26345-5-I.    Division One.    August 26, 1991.]

*In the Matter of the Dependency of* C.R.B.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES,
*Respondent,* v. TINA BROWN, *Appellant.*

*Eric Broman* of *Washington Appellate Defender Association,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *D. Peterson, Assistant,* for respondent.

WEBSTER, J. — Tina Brown appeals from the Superior Court, asserting that the court erred in (1) entering an order finding her in default, (2) terminating her parental rights to her son, C.R.B., and (3) denying her motion for revision. We reverse.

FACTS

C.R.B. was born on August 25, 1989. When he was 3 days old, the State petitioned the court to find that he was a dependent child under RCW 13.34.030(2)(c)[1] based on the following facts:

1. On 8/25/89, the child was born at the University of Washington Hospital to a nineteen (19) year old mother, Tina Merriweather, who is without housing and has been homeless and residing in various shelters in Seattle.

2. The North King County District Office of Public Health unsuccessfully attempted to work with the mother during pregnancy in that she failed to maintain regular prenatal care appointments.

3. The mother has named Charles Brown as the father of the infant. Mr. Brown has previously assaulted the mother and is currently incarcerated at King County Jail on assault charges.

4. Public Health Nurse Christina Litchfield states that the mother is suspected to be using drugs and has a history at usage that resulted in a previous infant's death three (3) days after birth, with drug related congenital anomalies.

5. On 8/25/8[9], the University of Washington Hospital placed an Administrative Hospital Hold on the baby.

The court ordered that the baby be taken into the custody of the Department of Social and Health Services (DSHS) pursuant to RCW 13.34.050. Initially DSHS arranged to have C.R.B. and Brown reside at Brown's mother's house, but when Brown did not abide by the ordered arrangement, DSHS obtained an order to place the child in foster care. On October 16, 1989, the court granted a finding of dependency pursuant to RCW 13.34.030(2)(c) and entered a dispositional order pursuant to RCW 13.34.130.

On January 31, 1990, the Department filed a "Petition for Termination of Parent-Child Relationship", alleging in part:

---

[1] RCW 13.34.030(2)(c) provides that a child is dependent if the child "has no parent, guardian or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development".

I. There is little likelihood that conditions will be remedied so that the child can be returned to the parents in the near future.

. . . .

J. Continuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

The petition requested the court to permanently terminate Brown's parental rights to C.R.B. and to commit him to the custody of DSHS. Along with the petition, DSHS filed an "Affidavit and Notice of Contested Hearing", which stated that

The changes in circumstances and issues to be contested are: To take the testimony of caseworker on record to support the Department's findings of fact, conclusions of law, and order terminating parent-child relationship.

In addition, DSHS filed a "Certification in Support of Notice by Publication", indicating that the sheriff was unable to find Brown after a diligent search and that no forwarding address was left at the last known address. DSHS also filed a "Motion and Order of Publication and Setting Termination of Publication Hearing" by which the court ordered the clerk's office to issue notice to Brown by publication, and set a "termination of publication hearing" for May 9, 1990.

On February 20, 1990, the court held a dependency review hearing. The resulting order indicated that Brown "had not followed through with services", had visited the child only occasionally, and had not kept visitation appointments. On March 21, 1990, DSHS filed a notice and summons for the May 9, 1990, hearing. Brown's husband accepted service for her by certified mail on March 23, 1990. It is unclear whether Brown actually received notice of the upcoming hearing.[2]

Brown was not present at the May 9, 1990, hearing; however, her attorney, Virginia Marshall, appeared in her

---

[2]Brown's attorney told the court that she spoke with Brown on February 20, 1990, in connection with the dependency review hearing, and one would assume that she told Brown about the termination hearing.

behalf. Marshall informed the court that she had not had contact with Brown since February of 1990, at which time Brown expressed an interest in having the child returned to her care and her willingness to participate in court-ordered services. Brown also indicated she wanted her mother to be considered as a placement alternative.

At the hearing, DSHS presented a "Motion, Certification, and Order of Default" and "Findings of Fact, Conclusions of Law, and Order for Termination of Parent-Child Relationship". The motion and proposed orders were not served on Marshall in advance of the hearing. Brown's caseworker, Nancy Diaz, offered the following testimony in support of the order to terminate Brown's parental rights:

Q: How long have you served as a Caseworker on this particular case?
A: Since December of 1989.
Q: Has this child been found to be dependent?
A: Yes, he has.
Q: Has the Court entered a Dispositional Order?
A: Yes, [it has].
Q: Has the child been removed, or will at the time of this hearing have been removed from the custody of the parent for a period of at least six months, pursuant to a Dependency Finding?
A: Yes, he has.
Q: Have the services ordered been offered or provided and all necessary services reasonably available and capable of correcting the parental deficiencies within the foreseeable future have been offered or provided?
A: Yes, they have.
Q: Would you say there's little likelihood the conditions will be remedied so that the child can be returned to the parent in the near future?
A: I believe there's little likelihood as the parents have not accepted any services at this time.
Q: Would continuation of this parent-child relationship clearly diminish the child's prospects for early integration into a stable, permanent home?
A: They would.
Q: Would termination of the parent-child relationship be in the best interest of this child?
A: I believe it would.

Marshall did not cross-examine the caseworker or offer any testimony. Marshall asserted that she wanted to proceed to October 15, 1990, which she understood to be the trial date to terminate Brown's parental rights. She indicated she would withdraw as Brown's attorney if she had not had any contact with Brown at that time. The superior court commissioner responded:

> I'm inclined to sign the Order. The mother has been served, you've lost contact with her and you aren't able to contact the grandmother. I think that if we didn't sign it and continued it to the trial date, then we'd probably be in the same position then.

The findings of fact set forth in the proposed order simply restated the testimony given by Brown's caseworker. The commissioner signed the order of default and the order terminating Brown's parental rights.[3]

On May 21, 1990, Marshall filed a motion and affidavit to revise the commissioner's rulings, in which she stated:

> 1. That I am the assigned counsel of record for Tina Brown, mother of the above-mentioned child, and I am familiar with the files and records herein.
>
> 2. On May 9, 1990, I represented Tina Brown at a termination of publication hearing at King County Juvenile Court before Commissioner Jack Richey. Prior to that hearing Tina Brown had been published for and personally served with notice of the above hearing regarding termination of her parental rights to [C.R.B.].
>
> 3. Tina Brown did appear at a dependency review hearing on February 20, 1990. I did have contact with her on that date at which time she expressed an interest in having her child returned to her care or to her mother's care. She expressed a desire to follow through with court ordered services and assistance in doing so.
>
> 4. She did not appear at the hearing regarding termination of publication on May 9, 1990. I appeared as her counsel of record. I attempted to [locate] her at past addresses given to me by my client, Tina Brown, but was not able to do so.

---

[3]The order terminating Brown's parental rights failed to indicate that the baby would be placed in the permanent custody of DSHS. On November 1, 1990, DSHS obtained a nunc pro tunc order correcting the error. Contrary to appellant's assertion, the orders were entered initially against both the mother and the father.

5. A termination of parental rights trial date had been set by DSHS for October 15, 1990. I requested that the court proceed to that trial date in regards to my client, Tina Brown.

6. Instead, the court not only terminated the publication as to my client, but also permanently terminated Tina Brown's parental rights to her child.

7. As a result the mother's rights to due process and protection of her parental rights at a trial where she is represented by counsel were denied her.

8. Therefore, the Commissioner's decision on May 9, 1990 terminating Tina Brown's parental rights to [C.R.B.] should be revised and the trial previously scheduled for October 15, 1990 regarding termination of those rights should proceed.

9. Although the mother was not present at the May 9, 1990 hearing, she was represented by counsel. She had contact with her attorney as recently as February 1990 and could very possibly re-establish contact prior to the October 15, 1990 trial date.

On June 5, 1990, the Superior Court denied the motion for revision, struck the October 15, 1990, trial date, and affirmed the May 9 order of default and termination. The court reasoned that the findings of fact, conclusions of law, and record provided a sufficient basis for the order of default since the mother was served by publication, had no contact with her attorney since February 20, and failed to take part in any of the court-ordered services. Brown and Marshall were in contact at the end of May 1990, and Brown's counsel on appeal contends that he had at least eight contacts with Brown before her brief was filed.

## DISCUSSION

■ ■ Brown claims that terminating her parental rights by means of a default proceeding violated her right to due process. The essential requirements of procedural due process are notice and an opportunity for a hearing appropriate to the nature of the case. *Burman v. State*, 50 Wn. App. 433, 440, 749 P.2d 708, *review denied*, 110 Wn.2d 1029 (1988). Three elements must be analyzed in evaluating the adequacy of a procedure: (1) the private interest at stake, (2) the risk that the procedure used will result in error and the probable value of additional or

substitute procedural safeguards, and (3) the government's interest in the procedure used and the fiscal or administrative burden of substitute or additional procedural safeguards. *In re Harris*, 98 Wn.2d 276, 285, 654 P.2d 109 (1982) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)). *See also Santosky v. Kramer*, 455 U.S. 745, 754, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982).

■ ■ As to the first element, a natural parent's interest in the care and custody of his or her child is a "fundamental liberty interest". *Santosky*, 455 U.S. at 753. The child also has an interest in preventing the erroneous termination of its relationship with its natural parents. *See Santosky*, 455 U.S. at 765 ("the parents and the child share an interest in avoiding erroneous termination"); *cf. State v. Santos*, 104 Wn.2d 142, 148, 702 P.2d 1179, 70 A.L.R.4th 1021 (1985) (child has the right to accurate determination of parentage and, accordingly, the right to counsel in a paternity proceeding). As to the second element, the risk of error in a default proceeding that does not reach the merits of the case is obviously great. The third element of the analysis involves competing considerations. On the one hand, the State has little interest in using a default procedure as opposed to having a trial on the merits. On the other hand, the State and the child have a strong interest not only in establishing a stable and permanent home for the child, but also in doing it as soon as possible. DSHS argues that lengthy legal proceedings create extended uncertainty, which infringes on the child's interest in having stable relationships. It therefore argues that the default judgment is a remedy that should be available.[4]

---

[4]DSHS relies on *Gage v. Boeing Co.*, 55 Wn. App. 157, 776 P.2d 991, *review denied*, 113 Wn.2d 1028 (1989) in which the court stated: "[T]he default judgment must normally be viewed as available when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *Gage*, at 160-61 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

■ We agree that a child's right to a stable home cannot be put on hold interminably because a parent is absent from the courtroom and has failed to contact his or her attorney. *See In re Parzino*, 22 Wn. App. 88, 587 P.2d 201 (1978) (mother had previously placed child in foster care, left the state, and maintained no contact with her attorney). We thus hold that a parent's failure to respond to notices and summons of a proceeding to terminate parental rights, in itself, does not preclude the State from obtaining a judgment permanently terminating that parent's right to the custody and care of his or her child. *See* RCW 13.34. However, we conclude that a hearing on the merits of the case is necessary to satisfy due process requirements.[5] RCW 13.34.180 and .190 set forth specific procedural requirements that must be followed in order to terminate parental rights, including establishing particular factual matters. In seeking a default judgment, the State may not circumvent these requirements. CR 55(b)(2) states:

> If, in order to enable the court to enter judgment or to carry it into effect, it is *necessary to . . . establish the truth of any averment by evidence* or to make an investigation of any other matter, the court may conduct such hearings as are deemed necessary . . .. Findings of fact and conclusions of law are required under this subsection.

(Italics ours.) For the reasons set forth below, we conclude that the court improperly terminated Brown's parental rights.

■ Brown contends that entering a default judgment against her was improper since her attorney personally

---

[5]*Cf. In re Christina T.*, 590 P.2d 189 (Okla. 1979) (summary judgment inappropriate in dependency hearing and petition is deemed controverted upon its filing because of presumption that best interests of children are served by parents); *In re Appeal in Pima Cy. Juvenile Action 86192*, 151 Ariz. 359, 727 P.2d 1070 (Ct. App. 1986) (trial court erred in granting dependency petition based solely on the allegations of the petition when no evidence was admitted); *In re S.M.*, 12 Kan. App. 2d 255, 738 P.2d 883 (1987) (court infringed on father's due process rights when father could not be present at hearing and court refused to grant a continuance).

appeared in her behalf at the May 9, 1990, hearing. CR 55(a) provides:

> (1) *Motion*. When a party against whom a judgment for affirmative relief is sought has *failed to appear, plead, or otherwise defend* as provided by these rules and that fact is made to appear by motion and affidavit, a motion for default may be made.

(Italics ours.) Washington courts have held that "[w]hen an attorney makes a formal appearance for a defendant, it is the *defendant* who appears, and not the attorney." *Tiffin v. Hendricks*, 44 Wn.2d 837, 843, 271 P.2d 683 (1954). A defendant who has appeared to contest any action in a proceeding against him "is not subject to default merely because he is not present in court when the case is called for trial." *Tacoma Recycling, Inc. v. Capitol Material Handling Co.*, 34 Wn. App. 392, 395, 661 P.2d 609 (1983) (citing 10 C. Wright, A. Miller & M. Kane, *Federal Practice* § 2682, at 409-10 (2d ed. 1983)).[6] In light of the policy that controversies should be determined on their merits rather than by default, appearance requirements should be liberally construed. *Gage v. Boeing Co.*, 55 Wn. App. 157, 161, 776 P.2d 991, *review denied*, 113 Wn.2d 1028 (1989). Since Brown communicated her intention of contesting the termination to her attorney only 2 months earlier, and her attorney contested the action at the hearing, Brown "appeared" under CR 55(a)(1). *See Gage*, at 161.

Brown also contends that DSHS did not provide proper notice of its motion for a default order. CR 55(a)(3) states:

> Any party *who has appeared in the action for any purpose* *shall* be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion.

(Italics ours.) Since Brown's attorney appeared at the hearing to terminate Brown's rights, Brown was entitled

---

[6] Brown points out that neither CR 55, the statute providing for termination of parental rights, nor the notice given by DSHS indicates that she was required to appear at the May 9, 1990, hearing *in person*.

to 5 days' notice before any hearing on a motion for a default order. Although Brown's attorney received notice that the hearing on May 9, 1990, would be a "contested" hearing at which evidence would be heard in support of the motion to terminate Brown's parental rights, she received no notice that DSHS intended to obtain a default order. Moreover, the May 9 hearing was initially characterized as a "termination of publication hearing". We believe the initial purpose of the hearing was to obtain the court's permission to commence proceedings to terminate Brown's parental rights in her absence based on her failure to respond to official summons and notices. Since Brown appeared to contest the action and DSHS failed to give proper notice of its motion for a default order, the court erred in finding that Brown was in default.

██ Brown further argues that the testimony offered against her was insufficient to terminate her parental rights. An appellate court will not disturb the trial court's findings if they are supported by substantial evidence. *In re Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). When the State must prove its case by clear, cogent, and convincing evidence, the evidence must be more substantial than that required under a preponderance of the evidence standard. *Sego*. Required findings must be "sufficiently specific to permit meaningful review." *In re LaBelle*, 107 Wn.2d 196, 218, 728 P.2d 138 (1986). Although the degree of particularity required depends on the circumstances of each case, at minimum, the findings should indicate the factual bases for the ultimate conclusions. *LaBelle*. The court may look to the entire record to determine whether the evidence is sufficient to support the court's findings. *LaBelle*.

The "evidence" presented by Brown's caseworker at the hearing consisted of legal conclusions parroting the language of the statutory requirements found in RCW 13.34.180. Aside from the caseworker's testimony, the only other evidence entered into the record at the termi-

nation proceeding was that Brown had been served by various means and had not responded.

The court's "findings of fact" follow the testimony of Brown's caseworker and, accordingly, consist only of legal conclusions. Since the court's conclusions are not supported by facts and do not satisfy the mandate of proof by "clear, cogent, and convincing" evidence, they do not satisfy the requirements of RCW 13.34.180 and .190. Moreover, they are not "sufficiently specific to permit meaningful review." *See LaBelle*, at 219. We thus conclude that the court failed to comply with RCW 13.34.180 and .190.

■ The court's failure to satisfy the statutory requirements may not be corrected by relying on evidence presented at the dependency hearings. Although the evidence contained in the dependency hearing records supports the court's decision terminating Brown's parental rights, the purpose of the dependency hearings was not to terminate Brown's parental rights, and the evidence presented at those hearings may not have been subjected to the rigors of an adversarial proceeding. *See In re A.W.*, 53 Wn. App. 22, 765 P.2d 307 (1988) (termination hearing, for the purposes of notice and appearance requirements, is a proceeding separate from any dependency proceedings), *review denied*, 112 Wn.2d 1017 (1989).

In view of our conclusion that the default order terminating Brown's parental rights violated due process requirements, we do not address Brown's argument that the court erred in denying her motion for revision.

The judgment is reversed.

GROSSE, C.J., and AGID, J., concur.