# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 70624-1-I |
| | ) | |
| S.B.-L., b.d. 2/3/10 | ) | |
| | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF SOCIAL AND HEALTH SERVICES, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v | ) | |
| | ) | |
| KEVIN LOUCH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 25, 2014 |
| | ) | |

VERELLEN, A.C.J. — Kevin Louch, father of S., appeals the trial court's order terminating his parental rights. He challenges the trial court's conclusions that continuation of S.'s relationship with him diminishes her prospects for early integration into a stable and permanent home and that S. would likely be subject to serious emotional or physical damage if placed in his custody. But the trial court explained these conclusions of law in its memorialization of its oral decision. The conclusions are amply supported by unchallenged findings of fact.

Louch also challenges the trial court's conclusion that the Department of Social and Health Services (Department) engaged in active efforts to provide him with remedial services as required under the Washington State Indian Child Welfare Act (ICWA), chapter 13.38 RCW. Specifically, he challenges limits on his visitation and a lack of Native American cultural activities. Although visitation is an important right of the

family, it is not, on its own, a service that remedies parental deficiencies. And overwhelming evidence supports the trial court's determination that additional services would be futile. The alleged lack of active efforts is not persuasive. We affirm.

## FACTS

S. was born on February 3, 2010 to Jane Baker-Louch and Kevin Louch. Shortly after her birth, she was placed in out-of-home care and she currently resides in an out-of-home placement. S. is a member of the Nooksack Indian Tribe and is an Indian child under ICWA.

S. is the third child born to Baker-Louch and Louch. In January 2009, Louch's parental rights to his two older sons were terminated. In that order of termination, the trial court explained that Louch was offered many remedial services, including psychological evaluation and parenting assessment, parenting classes, drug and alcohol evaluation and treatment, random urinalysis, mental health counseling, medication management for mental health issues and pseudo-seizure disorder, domestic violence perpetrator treatment, and assistance to obtain secure housing free from alcohol, drugs, and domestic violence. Louch did not avail himself of the services ordered and failed to address his deficiencies. He continued to have substance abuse, mental health, and domestic violence issues. Louch denied having any such issues and continued to drink to intoxication, which resulted in continued law enforcement involvement and arrests. Louch lacked rudimentary and essential parenting skills to safely or adequately care for his children. For example, he would become agitated and volatile when he perceived that he was being criticized, and his lack of understanding of child development placed him at a high risk to inflict abuse and punish his children in

2

inappropriate ways. Louch's older boys were adopted by a Native American family. S. is currently placed with the same family.

S. was found to be dependent as to Louch in November 2010. Louch's parental rights were initially terminated in 2012, but that termination order was reversed due to insufficient evidence that Louch made a knowing, intelligent, and voluntary waiver of his right to counsel. On remand, after a 10-day trial in May and June 2013, the trial court terminated Louch's parental rights.[1]

The 2010 disposition order required Louch to establish and maintain a safe, stable, suitable living environment free of domestic violence, physical and psychological abuse, drug and alcohol abuse, and criminal activity. He was ordered to participate in many services, including drug and alcohol evaluation and treatment, random urinalysis, domestic violence batterer's treatment, parenting classes, a medical examination to address his seizures, and psychiatric and psychological evaluations and treatment. All of the services ordered were offered to Louch by the Department. Louch started a parenting class but did not finish. He did not consistently participate in urinalysis. He did participate in a drug and alcohol evaluation but adamantly denied that he had a drug or alcohol problem and refused to participate in the recommended treatment program. He attended some psychological counseling but was unable to continue when further counseling was contingent on maintaining sobriety and engaging in substance abuse counseling, which he refused to do. At trial, Louch continued to deny the existence of any parental deficiencies and testified that he would not abstain from marijuana or alcohol until his daughter was placed in his custody.

---

[1] Baker-Louch's parental rights to S. were terminated in February 2012 and are not at issue in this appeal.

3

Dr. Lawrence Majovski diagnosed Louch with longstanding mood and personality disorders that cause Louch to lack impulse control, become unstable, and have poor judgment skills. According to Dr. Majovski, Louch needs individualized mental health counseling and psychiatric medical management and, without such treatment, has an "extremely poor prognosis to adequately parent."[2] Licensed mental health therapist Andrea Lindee diagnosed Louch with posttraumatic stress disorder and testified that he needs at least two years of mental health therapy, including substance abuse treatment, to address and correct the issues that make him an unfit parent.

Indian expert Hunter Morrigan also opined that S. would be at risk if placed with Louch for several reasons. First, Louch's untreated alcohol and substance abuse issues lead to instability for S. because of his lack of awareness and judgment while impaired. Second, his untreated mental health issues make him unstable, loud, and prone to outbursts of anger. Finally, his untreated domestic violence tendencies could lead to violence directed at S. or lead to her becoming inadvertently injured.

Visitation supervisor Bill Kettenring testified that he supervised 34 visits between S. and Louch and that Louch engaged in yelling episodes in S.'s presence at nearly all of the visits. The trial court found that Louch was often "inappropriate, angry, and ranting" during the visits, expected things from S. that are beyond her developmental capabilities, and was unable to curtail his opinions and ranting.[3] S.'s therapist recommended that the visits be suspended.

The trial court found that Louch lacks an understanding of childhood development and has expectations for S. that are beyond her developmental capacity.

---

[2] Clerk's Papers at 1092 (Finding of Fact 2.23).

[3] Id. at 1093 (Finding of Fact 2.29).

4

For example, Louch stated his belief that a two-year-old should not be allowed to say "no" to a parent. Additionally, the trial court found that Louch had difficulty controlling his anger both inside and outside the courtroom. For example, he had an "explosive outburst" at a parenting class, causing the facilitator, other parents, and their young children to feel unsafe so much so that some of the parents and children fled the room.[4] The court noted that during the trial Louch "exhibited difficulty controlling his anger[,]"engaged in "frequent and loud outbursts and disruptions[,]" and, as a result of this anger, he "cannot control himself to the extent necessary to care for a child, and therefore a child in his care would be at risk of harm."[5]

Louch continued to have involvement with the criminal justice system—a fourth degree domestic violence assault conviction in December 2012—and frequent interactions with the police over the last two years, including an incident as recent as April 2013, during which he appeared intoxicated. Despite a history of domestic violence between Louch and Baker-Louch, Louch intended to remain married to and live with Baker-Louch even though her parental rights to S. were already terminated.

Finally, court appointed special advocate Pam Jensen testified in support of all the above findings and opined that Louch was not capable of providing adequate care for S. The trial court determined that Louch was unfit to parent S. and terminated his parental rights.

Louch appeals.

---

[4] Id. at 1092( Finding of Fact 2.27).

[5] Id. (Finding of Fact 2.28).

## DISCUSSION

To prevail in a petition to terminate parental rights, the State must prove by clear, cogent, and convincing evidence:

> (a) That the child has been found to be a dependent child;
>
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
>
> (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
>
> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
>
> (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . .
>
> . . . .
>
> (f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.[6]

The State must also prove by a preponderance of the evidence that termination of parental rights is in the best interests of the child.[7]

A trial court's findings of fact entered following a termination hearing must be supported by substantial evidence in the record and must, in turn, support the trial court's conclusions of law.[8] Findings of fact supported by substantial evidence are

---

[6] RCW 13.34.180(1).

[7] RCW 13.34.190(1)(b); In re Welfare of S.V.B., 75 Wn. App. 762, 775, 880 P.2d 80 (1994).

[8] In re Dependency of C.B., 79 Wn. App. 686, 692, 904 P.2d 1171 (1995).

binding on the reviewing court.[9]  Unchallenged findings of fact are treated as verities on appeal.[10]

*Prospects for Early Integration into a Stable and Permanent Home*

Louch argues that the trial court failed to make any specific findings supporting its legal conclusion that continuation of S.'s relationship with him diminished her prospects for early integration into a stable and permanent home under RCW 13.34.180(1)(f).  He also argues that the State failed to prove this element by clear, cogent, and convincing evidence.  We disagree.

Where a court must enter required findings, those "findings must be 'sufficiently specific to permit meaningful review.'"[11]  The findings should indicate the factual bases for the ultimate conclusions, but the degree of particularity required depends on the circumstances of each case.[12]  We may look to the entire record to determine whether the evidence is sufficient to support the court's finding.[13]

Here, the trial court entered a finding addressing RCW 13.34.180(1)(f):

> 2 47  A continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home[.][14]

---

[9] State v. Maxfield, 125 Wn.2d 378, 385, 886 P.2d 123 (1994).

[10] Fuller v. Dep't of Emp't Sec., 52 Wn. App. 603, 605, 762 P.2d 367 (1988).

[11] In re Dependency of C.R.B., 62 Wn. App. 608, 618, 814 P.2d 1197 (1991) (quoting In re Detention of LaBelle, 107 Wn.2d 196, 218, 728 P.2d 138 (1986)).

[12] Id.

[13] Id.

[14] Clerk's Papers at 1094.

Louch claims that the court made no written or oral findings that include any specific reasons why it came to this conclusion. While this finding is abbreviated, it is adequately supplemented by the trial court's written memorialization of its oral ruling:

> Mr[.] Louch said here in court that when [S.] is returned and not before that time will he stop drinking and attend to his other issues[.] But for [S.'s] safety and well-being it cannot be that way[.] The evidence has convinced this Court that it would take Mr[.] Louch well over 6 months to address and correct the issues identified during trial even if he were to suddenly go full force toward addressing them as offered and ordered many months and years ago[.] The court accepts the testimony of Andrea Lindee that in her opinion it would take at least 2 years to address these issues that make Mr[.] Louch an unfit parent[.] Therefore, there is little likelihood of correction of parental deficiencies in the near future[.] *A young child like [S.] is entitled to permanency and stability in her home and she cannot wait any longer for that to occur[.] Further delay could impair her chances for integration into a stable and permanent home and I cannot let that happen to her[.] She deserves a stable home where her caregivers are not so burdened by their own issues to present a risk of harm to her[.]*[15]

Louch argues that the permanency finding in the order terminating his parental rights is inadequate in light of In re Dependency of C.R.B.[16] because it merely parrots the statutory element. In C.R.B., the only evidence of dependency came from a caseworker whose testimony was merely that the requirements of RCW 13.34.180(1) were met.[17] The findings of fact in the trial court's order simply restated that testimony.[18] On appeal, this court held that the testimony and legal findings were not sufficiently specific for review.[19]

---

[15] Id. at 1076 (emphasis added).

[16] 62 Wn. App. 608, 814 P.2d 1197 (1991).

[17] Id. at 612.

[18] Id. at 613.

[19] Id. at 618-19.

Here, unlike C.R.B., the trial court took testimony over 10 days of trial and entered detailed findings of fact, many of which are not contested by Louch. The fact that the trial court's conclusion on permanency mirrors the statutory language of RCW 13.34.180(1)(f) alone does not make it inadequate for review, especially given the trial court's explanation of its conclusion in the written memorialization of its oral ruling.[20]

Louch also argues that the State failed to present clear, cogent, and convincing evidence that RCW 13.34.180(1)(f) was satisfied. We disagree.

RCW 13.34.180(1)(f) focuses on the parent-child relationship and whether it impedes the child's prospects for integration.[21] Evidence regarding the quality of the parent-child relationship has often been found to satisfy the State's burden of proof for this factor.[22] For example, in In re Dependency of Esgate, the Supreme Court affirmed the termination of parental rights because continuation of the parent-child relationship created feelings of insecurity and instability in the child.[23] Similarly, in In re Dependency of K.D.S., the Supreme Court affirmed the termination of parental rights where the father could not grasp his child's needs and limitations and could not understand the impact of his behavior on her health.[24] In K.D.S., there was testimony that the father's visits caused destabilization in the child's life, leading to severe behavioral outbursts

---

[20] "Even if inadequate, written findings may be supplemented by the trial court's oral decision or statements in the record." LaBelle, 107 Wn.2d at 219. Furthermore, where no exceptions are taken below to the findings, "we will give them a liberal construction rather than overturn the judgment based thereon." Id.

[21] In re Dependency of K.D.S., 176 Wn.2d 644, 658, 294 P.3d 695, 702 (2013).

[22] Id.

[23] 99 Wn.2d 210, 214, 660 P.2d 758 (1983).

[24] 176 Wn.2d 644, 658, 294 P.3d 695 (2013).

that were detrimental to her health and safety.[25] The court held that "continuing [the] parental relationship diminishes the likelihood K.D.S. will be emotionally and psychologically prepared to integrate into a stable and permanent home should one become available."[26]

Here, the trial court entered uncontested findings of fact that Louch refuses to engage in services until S. is returned to his custody and that it would take at least two years of treatment before his parental deficiencies could be corrected. There were also uncontested findings that Louch lacks an understanding of child development, was often "inappropriate, angry, and ranting" during his visits with S., and that S.'s therapist recommended that the visits be suspended.[27] These findings support the trial court's conclusion that continuing S.'s parental relationship with Louch diminishes the likelihood she will be emotionally and psychologically prepared to integrate into a stable and permanent home.

Louch argues that the trial court came to its conclusion because there was testimony that S. cannot be adopted until she is legally free and his parental rights are terminated. But as reflected in the memorialization of the oral ruling, the trial court properly focused upon S.'s need for stability as well as her prospects for adoption.

At oral argument, Louch argued that there was no evidence that S.'s current home was not stable, that she could not remain there permanently, that adoption was her only option outside of reunification, or how her legal relationship with Louch affected her integration into her current home. But these arguments misperceive the existing

---

[25] Id. at 659.

[26] Id.

[27] Clerk's Papers at 1093 (Finding of Fact 2.29).

standards for RCW 13.34.180(1)(f). There is no requirement for specific evidence that no stable housing alternatives are available if the parent maintains his or her legal relationship. As described in K.D.S., the trial court's finding is supported if there is evidence that the parental relationship diminishes the likelihood that the child will be emotionally and psychologically able to integrate into a stable and permanent home, regardless of the placement options available.[28] The record supports the trial court determination that S.'s integration into a permanent home can only be achieved by termination of Louch's parental rights.[29]

Finally, Louch argues that the State's failure to prove RCW 13.34.180(1)(f) precludes a finding that termination of the parent-child relationship was in S.'s best interest. But because the State proved the "early integration" element, this argument fails.

*Active Efforts to Provide Remedial Services*

Louch argues that the State failed to prove by clear, cogent, and convincing evidence that the Department engaged in "active efforts" to prevent the breakup of the Indian family, as required under the federal and state ICWA.[30] Specifically, he focuses

---

[28] K.D.S., 176 Wn.2d at 659.

[29] See A.V.D., 62 Wn. App. at 569-70.

[30] 25 U.S.C. § 1912(d); RCW 13.38.130(1). The language at issue in the federal and state statutes challenged here is identical. Under RCW 13.38.130(1), the Department is required to "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." "Active efforts" are defined earlier in ICWA to mean "a showing to the court that the department or supervising agency social workers actively worked with the parent, parents, or Indian custodian to engage them in remedial services and rehabilitation programs ordered by the court or identified in the department or supervising agency's individual service and safety plan beyond simply providing referrals to such services." RCW 13.38.040(1)(a)(iii).

on the suspension of his visitation and a lack of Native American cultural activities. His arguments are not persuasive.

Louch argues that the Department improperly denied him visitation after October 2012 and that this denial constituted a failure to engage in active efforts to provide remedial services.[31] His argument relies on the premise that visitation is a remedial service under ICWA, but he provides no persuasive authority for that proposition.

The purpose of both ICWA and chapter 13.34 RCW is to reunite children with their families if reunification is in the best interests of the children.[32] Visitation is an important, if not critical, right of the family.[33] Therefore, the Department is to "encourage the maximum parent and child and sibling contact possible."[34] Visitation may be limited or denied "only if the court determines that such limitation or denial is necessary to protect the child's health, safety, or welfare."[35] But that does not make visitation itself a remedial service.

In re Dependency of T.H. holds that that visitation is not a service that the Department is required to provide under RCW 13.34.180(1)(d).[36] The court noted that

---

[31] Louch argues that the Department did not engage in active efforts to provide remedial services because it made misrepresentations to the court that triggered the court's suspension of visitation upon remand after his first appeal. Based upon the record before us, we acknowledge that it is unclear whether the Department properly suspended Louch's visitation rights before his first appeal. But because visitation is not a remedial service, we need not reconcile this factual dispute.

[32] See RCW 13.34.020, RCW 13.38.030.

[33] In re Dependency of T.H., 139 Wn. App. 784, 162 P.3d 1141 (2007).

[34] RCW 13.34.136(1)(b)(ii).

[35] Id.

[36] 139 Wn. App. 784, 786, 162 P.3d 1141 (2007).

the term "services" required under RCW 13.34.136 includes domestic violence counseling, parenting classes, drug and alcohol counseling, random urinalysis, and other similar services.[37] Each of these activities is a means of curing parental deficiencies, whereas visitation itself provides no such rehabilitation. The court went on to explain that RCW 13.34.136 clearly differentiates between services and visitation and prohibits a dependency court from limiting visitation as a sanction for a parent's failure to comply with services.[38] Both of these circumstances imply that visitation is not itself considered a service.

Louch argues we should look to the definition of "remedial services" in RCW 13.34.025(2)(a), which is based upon the definition in the federal Adoption and Safe Families Act of 1997 (ASFA) of "time-limited family reunification services."[39] But RCW 13.34.025(2)(a) is expressly limited to the purposes of "this chapter."[40] ICWA is governed by chapter 13.38 RCW, an entirely separate chapter. Furthermore, although multiple remedial services are specifically listed in RCW 13.34.025(2)(a), the statute does not provide that visitation, on its own, is a remedial service.[41] Additionally, reliance

---

[37] Id. at 791 (quoting In re Dependency of A.A., 105 Wn. App. 604, 608-09, 20 P.3d 492 (2001)).

[38] Id. at 792.

[39] ASFA states that "time-limited family reunification services" includes "[s]ervices and activities designed to facilitate access to and visitation of children by parents and siblings." 42 U.S.C. § 629a(a)(7)(B)(vii). While ASFA indicates that remedial services may include services and activities designed to facilitate visitation, it does not specifically include visitation as a remedial service.

[40] RCW 13.34.025(2)(d).

[41] "For purposes of this chapter, remedial services are those services defined in the federal adoption and safe families act as time-limited family reunification services. Remedial services include individual, group, and family counseling; substance abuse treatment services; mental health services; assistance to address domestic violence; services designed to provide temporary child care and therapeutic services for families;

on RCW 13.34.025(2)(a) is not compelling because the concept of time-limited services, as defined in that statute, addresses a different purpose than remedial services for purposes of ICWA. Under ASFA, services are time-limited because federal law requires that federal funding for reunification services cease 15 months after a child first enters foster care.[42] There is no suggestion how such time limits relate to or are relevant in construing the term "remedial services" for the purposes of ICWA.

Despite Louch's argument that visitation is a remedial service under ICWA, that term is not defined in the federal or state version of ICWA. Louch cites no state or federal case holding that visitation itself is a remedial service for purposes of ICWA. Visitation as part of a parenting class or other therapy might be part of a remedial service, but consistent with T.H., visitation in and of itself is not "remedial."

Finally, even assuming visitation is a remedial service, "ICWA does not require the State to continue making active efforts to remedy parental deficiencies at the expense of physical or emotional damage to the child."[43] Numerous courts have held that active efforts under the federal ICWA does not mean persisting with futile efforts.[44]

---

and transportation to or from any of the above services and activities."
RCW 13.34.025(2)(a).

[42] "'[T]ime-limited family reunification services'" only apply to services and activities "during the 15-month period that begins on the date that the child . . . is considered to have entered foster care." 42 U.S.C. § 629a(a)(7)(A). Section 629a also defines other terms such as "family preservation services," "family support services," "adoption promotion and support services," and "non-Federal funds."

[43] In re Dependency of A.M., 106 Wn. App. 123, 136, 22 P.3d 828 (2001).

[44] See 61 A.L.R. 6th 521 at §§ 10, 11 (2011) (citing Wilson W. v. State, 185 P.3d 94 (Alaska 2008); People ex rel. K.D., 155 P.3d 634 (Colo. App. 2007); In re Nicole B., 175 Md. App. 450, 927 A.2d 1194 (2007), rev'd on other grounds by 410 Md. 33, 976 A.2d 1039 (2009); In re Interest of Louis S., 17 Neb. App. 867, 774 N.W.2d 416 (2009); People ex rel. J.S.B., Jr., 691 N.W.2d 611 (S.D. 2005); In re T.H., 105 P.3d 354 (Okla. Civ. App. 2005); State ex rel. C.D., 200 P.3d 194 (Utah Ct. App. 2008), cert. dismissed as moot, 245 P.3d 724 (2010)).

Here, the unchallenged findings of fact indicate that Louch was provided at least 34 supervised visits with S. and that Louch engaged in yelling episodes in her presence at nearly all of those visits. Louch was often "inappropriate, angry, and ranting" during the visits, expected things from S. beyond her developmental capabilities, and was unable to curtail his opinions and ranting.[45] And S.'s therapist recommended that the visits be suspended.[46] Furthermore, in denying visitation upon remand, the trial court found that "[v]isitation between [S.] and her father, Kevin Louch, would be harmful to the child's health[,] safety[,] and welfare."[47] Not only was visitation harmful to S., but Louch expressly and repeatedly refused to participate in any services that might correct the parental deficiencies he exhibited at visits. The record thoroughly supports the trial court's determination that further services were futile.

Louch also claims that there were traditional Native American cultural activities such as canoe voyages, sweat lodges, and talking circles that the Department did not make an active effort to provide to him. He also claims that, due to his severe mistrust of the child welfare system, the Department was required to "determine a different approach" to working with him in order to engage him in services.[48] But services were coordinated through the Nooksack Indian Tribe, and Louch cites no authority supporting his argument that the Department did not engage in active efforts by failing to provide

---

[45] Clerk's Papers at 1093 (Finding of Fact 2.29).

[46] Whether or not the trial court was previously misinformed that visitation had been suspended by an earlier court order, the views of S.'s therapist, the caseworker, the court appointed special advocate, and the Indian expert were all consistent with the detrimental impact of further visitation on S.

[47] Ex. 18.

[48] Appellant's Br. at 46.

access to the specific cultural activities referenced above.[49] Neither does Louch articulate any "approach" that would have been more successful in enticing him to engage in services. The trial court found that Louch "repeatedly and adamantly refused the offered services" and, when contacted by social workers trying to assist him in obtaining access to the services ordered "he was often loud, belligerent and profane."[50] Given these uncontested findings, the Department did make active efforts to reach out to Louch to try to engage him in services, which he refused.

*Serious Emotional or Physical Damage*

Louch argues that the Department failed to prove beyond a reasonable doubt that S. would likely be subject to serious emotional or physical damage if placed in his custody, as required under the federal and state ICWA. We disagree.

ICWA requires that, before termination, the Department prove beyond a reasonable doubt "that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[51]

Here, the trial court concluded beyond a reasonable doubt that "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[52] Louch challenges this conclusion, but it is supported by several unchallenged findings of fact, which are verities on appeal. Louch denies the existence of any parental deficiencies and refuses to participate in any

---

[49] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments unsupported by legal authority will not be considered); see also RAP 10.3(a)(4).

[50] Clerk's Papers at 1091 (Finding of Fact 2.12).

[51] RCW 13.38.130; see also 25 U.S.C. § 1912(f).

[52] Clerk's Papers at 1095 (Conclusion of Law 3.4).

16

services until S. is returned to his care. He has been diagnosed with mood and personality disorders that cause him to lack impulse control, become unstable, and have poor judgment skills which he is unlikely to overcome without treatment. Louch is in need of substance abuse treatment, which he refuses to engage in. He lacks an understanding of child development, which causes him to have expectations for S. beyond her developmental capacity. He is unable to control his anger to the extent necessary to care for a child and a child in his care would be at risk of harm. As previously noted, he was often inappropriate, angry, ranting, and yelling during visits. And S.'s therapist recommended that visits be suspended. Louch also has a history of domestic violence with Baker-Louch and continues to have frequent interactions with police, including a 2012 conviction for assault 4–domestic violence. Finally, Indian expert Morrigan testified that S. would be at risk if placed with Louch due to his untreated alcohol and substance abuse, which would lead to instability for S. because of Louch's lack of awareness and judgment while impaired; his untreated mental health issues, which make him unstable, loud, and prone to outbursts of anger; and his untreated domestic violence tendencies, which could lead to violence directed at S. or lead to her becoming inadvertently injured.

Louch argues that there was conflicting testimony about his mental health and that many of the providers who testified had not seen him in years or ever observed him with S. But regardless of his mental health diagnoses, Louch has made it clear that he refuses to engage in any services to address those issues or his substance abuse issues until S. is returned to his custody.

For the reasons detailed above, the Department proved beyond a reasonable doubt that Louch's continued custody of S. is likely to result in serious emotional or physical damage to her.

Louch also argues that the State did not meet its burden because at trial, Louch was not using alcohol or nonprescription drugs and he had stable housing. Although both of these accomplishments are admirable, his continued refusal to engage in services despite his serious parental deficiencies, his unreasonable expectations for S., his history of domestic violence, and his criminal behavior all support the trial court's conclusion.

*Unfit Parent*

Louch contends his arguments show that the Department did not meet its burden to prove that he is an unfit parent. But because none of his arguments on appeal are persuasive, we disagree. Despite Louch's professed concern for S., there was ample evidence presented supporting the trial court's conclusion that Louch is an unfit parent.

We affirm the trial court.

WE CONCUR: