FILED
NOVEMBER 18, 2014
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Welfare of: | ) | No. 31727-7-III |
| | ) | (consolidated with |
| S.I. | ) | 31728-5-III) |
| | ) | |
| D.D. | ) | PUBLISHED OPINION |
| | ) | |
| | ) | |

LAWRENCE-BERREY, J. — A party who fails to appear in an action is not entitled to notice prior to entry of a default order. We are asked to decide whether a mother who appeared and participated in a dependency action yet failed to appear in a subsequent termination proceeding is required to receive notice prior to entry of a default order in the termination proceeding. We hold that a dependency proceeding is separate from a termination proceeding. We also hold that a parent's appearance and participation in a dependency proceeding does not constitute an appearance in a later termination proceeding. Therefore, a default order entered in a termination proceeding without notice to the nonappearing parent is proper and need not be set aside unless the parent establishes good cause. Finally, we also hold that the trial court did not abuse its discretion when it denied the mother's motion to set aside the default order. We affirm

the default order, determine that the process used to terminate the mother's parental rights was constitutional, and affirm the trial court's termination of the mother's parental rights.

FACTS

In July 2011, the Department of Social and Health Services (Department) filed a dependency petition with respect to two of Maquel Ames's children, S.I. (D.O.B. 5/11/04) and D.D. (D.O.B. 03/20/06). The petition alleged that Ms. Ames and her two children were living in a homeless camp, had no source of income, and that Ms. Ames was abusing illegal substances. S.I. reported to a social worker that they had been kicked out of her uncle's home and that her father, Mr. I., had been camping with her, Ms. Ames, and D.D. Mr. I. is an untreated sex offender, convicted of child rape.

The mother appeared in the dependency action. The court found the children dependent and entered an agreed order of dependency on October 4, 2011, as to the mother. On that same date, the court entered a default order of dependency as to Mr. I., and a few weeks later entered a default order of dependency as to the unknown father of D.D. The parenting deficiencies for the mother included substance abuse, mental health issues, and an inability to meet the physical and emotional needs of her children.

On October 4, 2011, the court entered a dispositional order as to the mother. This order, and subsequent review orders, required the mother to participate in a chemical

2

dependency screening, random urinalysis and blood alcohol (UA/BA) monitoring, mental health treatment, parenting assessment, individual counseling, family therapy, and medication management. The dispositional order entered as to Mr. I. and the unknown father of D.D. stated that an appropriate plan would be prepared in the event that a father appeared in the action. Neither father appeared in the action.

The services that were ordered were offered or provided to the mother. The mother sporadically participated in random UA/BA monitoring. She tested positive for amphetamine and methamphetamine on February 29, 2012, and failed to appear for testing after May 2012. The mother engaged minimally and struggled with attendance in outpatient chemical dependency treatment and stopped participating as of July 2012. The mother completed a parent-child assessment, but ceased participating in the assessment's recommended counseling after April 2012.

As for court appearances, Ms. Ames attended her first review hearing on December 20, 2011. The order entered that date set the next review hearing for March 27, 2012. Ms. Ames did not appear for the March 27, 2012 review hearing, and also did not appear for the subsequent review hearing scheduled on August 16, 2012. At the August 2012 review hearing, Ms. Ames was found noncompliant for not completing her chemical dependency screening, for not participating in outpatient treatment and

individual counseling, and for not providing UA's. She was chronically late to family therapy and did not provide adequate food and drink for her children as requested. The long-term permanent plan for the children was adoption. The court scheduled the next permanency planning review hearing for January 3, 2013.

Prior to that review hearing, in October 2012 the Department filed a petition for termination of parent-child relationship. Ms. Ames's social worker personally served her with the petition as well as a notice and summons to appear at 9:00 a.m. on December 6, 2012. The notice explained that the purpose of the hearing was to hear and consider evidence on the petition. It warned that if she failed to appear for the hearing, that "the court may enter an order in your absence permanently terminating your parental rights." Clerk's Papers (CP) at 125. The notice explained other important rights, including her right to representation at public expense and the process and contact information for appointment of counsel.

Ms. Ames did not appear at the courthouse for the December 6, 2012 hearing. On December 13, 2012, the Department filed a motion for default, and the trial court entered the default order the same day.

In late December 2012, Ms. Ames learned of the default order and requested appointment of counsel. She attended the January 3, 2013, dependency review hearing as

4

scheduled. The review hearing order found that Ms. Ames defaulted in the termination matter on December 13, 2012. The order noted that a hearing to vacate the default order and to set a relinquishment hearing could be scheduled in the future. The trial court appointed counsel to represent Ms. Ames in the termination matter.

Ms. Ames did not contact appointed counsel until March 2013. Later that month, Ms. Ames filed a motion to vacate the default order. A hearing was held. She claimed that good cause existed to vacate the default due to mistake, inadvertence, surprise, or excusable neglect, citing CR 60. She explained that she was not aware that the petition was to terminate her parental rights, that a hearing was set, and that she needed to apply for a public defender. Ms. Ames also explained that during the time she received the petition and learned of the default order, she was homeless and out of contact with her attorney and the Department. Once she learned of the default order, she was under the impression that the only way to vacate the default order would be to relinquish her parental rights and to enter into an open adoption. She stated that her delay in contacting appointed counsel was due to an unsuccessful attempt to obtain private counsel to handle the matter.

No. 31727-7-III; 31728-5-III
*In re Welfare of S.I. & D.D.*

The Department submitted a declaration from Dean Duncan, the children's court-appointed special advocate/guardian ad litem, who had served in such role since November 1, 2012. Mr. Duncan stated in pertinent part:

> I am opposing [the mother's motion to vacate the default order] for the following reasons:
>
> 1. Although I am convinced that Ms. Ames dearly loves her children, she has failed to do what has been required of her to regain custody of her children. In the past, almost two years, I have been present in meetings with Ms. Ames when the social worker repeatedly reminded [Ms. Ames] of the urgency of moving forward with services. Any forward movement has not taken place. The children have, as a consequence, been moved three separate times to three different foster placements.
> 2. [D.D.] is in need of special help to allow him to focus on school achievement. He needs some permanence in his life to make this happen.
> 3. I visited the foster-to-adopt home where [D.D.] and [S.I.] have been placed. These parents have taken great efforts to welcome these two children into their home and meet their physical and emotional needs. I have seen both children happy and thriving in their care. These children deserve the permanency and attention that this home will provide them.
> 4. The Department has done everything to give Ms. Ames the [o]pportunity to regain custody of her children. She has done very little to comply with the services offered to her.
> 5. I am surprised that Ms. Ames is making this motion. She was present during a transition team meeting with foster parents and social worker and myself. She made comments that indicated that she was supportive of the decision to provide permanency for her children.

CP at 176-77.

The trial court denied Ms. Ames's motion to vacate the default order. In denying

the motion, the court considered what the likely outcome of trial would be. The court

found that Ms. Ames had not demonstrated any progress in court-ordered services. The

court also found that there was no excusable neglect. The court also found that "[i]t is not

in the children's best interest to vacate the default [order], and the four months that have

gone by since the default was entered is further indication of the mother's neglect of her

children and this case." CP at 66. The trial court concluded that Ms. Ames had forfeited

her right to contest the termination of her parental rights and denied her motion to vacate.

A default termination hearing occurred on May 23, 2013. The hearing was brief.

The social worker assigned to the case answered questions under oath that mirrored the

statutory requirements for termination. The social worker testified to the primary reasons

for the dependency and the specific services that were offered or provided to Ms. Ames.

The social worker also indicated that Ms. Ames was marginally compliant, but with no

progress reported by the providers and that conditions were not likely to change in the

near future because Ms. Ames demonstrated a significant pattern of failure to engage or

make progress in her services. Last, the social worker stated that the children were living

together in an adoptive home and termination of parental rights was in their best interest.

The trial court entered corresponding findings of fact and conclusions of law and ordered termination.

Ms. Ames appealed. She contends that the court erred by not vacating the default order. She maintains that she was not given five days' notice before the order was entered, as required by CR 55. She also maintains that the termination of her parental rights by default violated procedural due process, and that the court's denial of her motion to vacate the default order constituted an abuse of discretion.

## ANALYSIS

*Notice Prior to Entry of the Default Order.* Ms. Ames contends that the entry of the order of default without five days' notice violated CR 55. She contends that she was entitled to notice because her appearance and participation in the dependency proceedings constituted an appearance in the termination proceeding. Whether Ms. Ames was entitled to five days' notice is a question of law that we review de novo.

CR 55(a) controls entry of an order of default and default judgment. A motion for default may be made when a party against whom a judgment is sought has failed to appear. CR 55(a)(1). CR 55 (a)(3) provides:

> *Notice.* Any party who has appeared *in the action* for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion. Any party who

8

has not appeared before the motion for default and supporting affidavit are filed is not entitled to a notice of the motion.

(Emphasis added.)

In *Gage v. Boeing Co.*, 55 Wn. App. 157, 776 P.2d 991 (1989), the employer appeared, participated in, and prevailed in two agency actions. The employee appealed both actions, served the employer with appropriate pleadings, but the employer failed to file a notice of appearance in either case. The employee, without notice to the employer, subsequently obtained two default judgments. The employer successfully vacated the default judgments. The employee appealed. In affirming the trial court, Division One of this court held that an appeal to superior court of an administrative proceeding was a continuation of the original action, and that the employer was entitled to notice of default. *Id.* at 162-63.

Conversely, an action to permanently terminate parental rights is a new proceeding and not an extension of the dependency action. *In re Hiebert*, 28 Wn. App. 905, 908-09, 627 P.2d 551 (1981). This is because the purpose of a dependency proceeding and a termination proceeding are diametric: A dependency proceeding seeks to provide services to a parent to correct parental deficiencies so as to reunify the parent-child relationship; whereas a termination proceeding seeks to permanently terminate the parent-child relationship.

The plain language of CR 55(a)(3) requires some type of appearance in the action for the five-day notice rule to apply. Ms. Ames did not, in any manner, appear in the termination proceeding. Ms. Ames was not entitled to five days' notice because she did not make a prior appearance in the termination proceeding.

*Constitutional Due Process.* We apply de novo review to determine whether a proceeding violated constitutional due process. *In re Welfare of J.M.*, 130 Wn. App. 912, 920, 125 P.3d 245 (2005).

Due process protections afford parents notice and an opportunity for a hearing appropriate to the nature of the case. *In re Dependency of C.R.B.*, 62 Wn. App. 608, 614, 814 P.2d 1197 (1991). The courts balance three factors when examining the adequacy of process: (1) the private interest at stake, (2) the risk that the procedure used will result in error, and (3) the State's interest in retaining the procedure used and the fiscal or administrative burden if additional safeguards were provided. *In re Dependency of A.G.*, 93 Wn. App. 268, 278-79, 968 P.2d 424 (1998).

1. *Private Interest at Stake.* The parent, child, and State have competing interests in a termination proceeding. *Id.* at 279. A parent has a constitutionally protected interest in the care and custody of their children. *In re Dependency of J.B.S.*, 123 Wn.2d 1, 12, 863 P.2d 1344 (1993). However, children have a right to establish a strong, stable, safe,

and permanent home in a timely manner and this right "'cannot be put on hold interminably because a parent is absent from the courtroom.'" *A.G.*, 93 Wn. App. at 280 (quoting *C.R.B.*, 62 Wn. App. at 616). The State has an interest in protecting the rights of children, which includes a speedy resolution of termination proceedings. *In re Dependency of M.S.*, 98 Wn. App. 91, 95, 988 P.2d 488 (1999). Judicial adherence to the statutory dependency-termination scheme reasonably balances these competing rights. Our legislature has declared:

> [T]he family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized. When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail.

RCW 13.34.020.

2. *Risk of Error.* "[A] parent's failure to respond to notices and summons of a proceeding to terminate parental rights, in itself, does not preclude the State from obtaining a judgment permanently terminating that parent's right to the custody and care of his or her child." *C.R.B.*, 62 Wn. App. at 616. Before a default termination judgment can be entered, the court must have a meaningful hearing on the merits of the case in accordance with statutory requirements for termination to satisfy due process. *Id.* This procedure decreases the risk of error in a default proceeding by ensuring that a decision is

11

reached on the merits of the case while balancing the rights of the parents, child, and the State. *See In re Dependency of E.P.*, 136 Wn. App. 401, 149 P.3d 440 (2006), *review granted*, 161 Wn.2d 1014, 171 P.3d 1057 (2007). We determine that the process used here, which requires sworn testimony of one familiar with the case and an opportunity for a court to independently question such person, greatly minimizes the risk that parental rights will be terminated in error.

3. *The State's Interest in the Procedure Used, and Administrative Burden of Additional Safeguards.* The statutory dependency-termination process requires the Department to identify and offer such reasonable and necessary services that will lead to the reunification of the parent-child relationship. In this case, prior to the entry of the order terminating Ms. Ames's parental rights, the Department was required to prove the following by clear, cogent, and convincing evidence: (1) the child has been found dependent, (2) the court has entered a dispositional order pursuant to RCW 13.34.130, (3) the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided, and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided, and (4) that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future.

RCW 13.34.190(1)(a)(i). This process provided Ms. Ames a meaningful opportunity to address and correct her parental deficiencies, with the foreknowledge that her failure to comply with court-ordered services might lead to the termination of her parental rights. The services offered in this case included a wide spectrum of professional services at substantial expense to the State. We hold that the procedures used here prior to termination of Ms. Ames's parental rights were not only sufficient, but amply so.[1]

Another aspect of the procedure used was allowing Ms. Ames the opportunity to vacate the default order. This opportunity allowed Ms. Ames the opportunity to establish "good cause" for failure to appear at the December 6, 2012, hearing, and also the opportunity to address the factual basis of the termination of her rights. We hold that this

---

[1] The dissent's alternate bases for reversal are that the evidence and also the written findings are insufficient to prove the statutory parental termination requirements by clear and convincing evidence. However, Ms. Ames did not raise these issues on appeal. It is improper for us to raise new issues sua sponte without first giving the parties the chance to brief them. RAP 12.1; *see also State v. Saintcalle*, 178 Wn.2d 34, 52, 309 P.3d 326, *cert. denied*, 134 S. Ct. 831, 187 L. Ed. 2d 691 (2013) (We are not in the business of inventing unbriefed arguments for parties sua sponte.). Nor should we further delay this case by requesting additional briefing. We are convinced that the issues would and should be resolved against Ms. Ames because the factual record prior to the default establishes Ms. Ames's chronic methamphetamine use that resulted in her living homeless with her two young children and an untreated sex offender with a criminal record of having raped a child. At some point—a point clearly reached in this case—abstract (yet important) notions of parental rights give way to concrete realities of protecting children from emotional and sexual abuse.

process, all as set forth above, minimizes the risk of an improper termination of parental rights and contains satisfactory safeguards that properly balance the constitutional rights of all participants.

*Denial of Motion to Vacate the Default Order.* Ms. Ames contends that the trial court abused its discretion when it denied her motion to vacate the default order. We review denial of a motion to vacate an order of default for an abuse of discretion. *In re Welfare of M.G.*, 148 Wn. App. 781, 792, 201 P.3d 354 (2009). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *Id.*

Ms. Ames argues that her failure to answer the termination petition was an inadvertent mistake. A court may set aside a default order "[f]or good cause shown and upon such terms as [it] deems just." CR 55(c)(1). "To establish good cause under CR 55, a party may demonstrate excusable neglect and due diligence." *In re Estate of Stevens*, 94 Wn. App. 20, 30, 971 P.2d 58 (1999). A party moving to vacate a default order is not required to demonstrate a meritorious defense to establish good cause. *Id.* at 30-31. Nevertheless, if a party offers evidence of a meritorious defense, a trial court more likely abuses its discretion should it fail to vacate a default order. *See, e.g., Canam Hambro Sys., Inc. v. Horbach*, 33 Wn. App. 452, 655 P.2d 1182 (1982). Here, Ms. Ames did not offer any evidence of a meritorious defense.

Washington courts favor resolving cases on their merits. *Sacotte Constr., Inc. v. Nat'l Fire & Marine Ins., Co.*, 143 Wn. App. 410, 414, 177 P.3d 1147 (2008). Despite this partiality, there is also a need for efficiency and for a system that ensures that all parties comply with judicial summons. *Norton v. Brown*, 99 Wn. App. 118, 123, 992 P.2d 1019 (1999).

The trial court did not abuse its discretion when it denied Ms. Ames's motion to set aside the default order. The facts support the trial court's conclusion that Ms. Ames did not establish good cause. Her failure to read the termination petition and summons to appear is not excusable neglect. She was handed the papers by her social worker. She was aware that her children were dependent and that her parental rights were in jeopardy. Her disregard of the termination petition and summons is not excusable neglect.

Ms. Ames also failed to demonstrate due diligence. Ms. Ames was provided a court-appointed attorney in early January 2013. Ms. Ames had the knowledge and available resources to exercise due diligence. She knew that the default order would affect the termination of her parental rights. Despite this knowledge, Ms. Ames delayed contacting her attorney until March 2013.

Finally, the trial court properly considered the likely result of the termination proceeding. By then, the trial court was well aware of Ms. Ames's noncompliant status in

15

the dependency proceeding.  Ample evidence supports the trial court's decision to deny the motion to vacate the default order.  The trial court did not abuse its discretion.  We affirm.

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Brown, A.C.J.

No. 31727-7-III
(consolidated with No. 31728-5-III)

FEARING, J. (dissenting) — Hurrying through a process or cutting corners in solving a problem, performing a task, or building a project does not save time. The effort and minutes later spent in correcting the mistakes and snags exceeds the labor and moments required to perform the task correctly in the first instance. This observation applies equally well to legal proceedings, particularly when fundamental constitutional rights are at stake. Taking special precautions to effectuate a litigant's constitutional rights may initially slow the process, but, in the end, speed the overall resolution of legal issues. The precautions may even prevent an appeal such as brought by Maquel Ames.

I respectfully dissent from the majority's decision to affirm the trial court's refusal to vacate the order of default against Maquel Ames. Based upon *Gage v. Boeing Co.*, 55 Wn. App. 157, 776 P.2d 991 (1989), I would rule that Ames made an appearance and was entitled to notice before any default order was entered. A parental termination proceeding is a continuation of a child dependency proceeding and the two sufficiently overlap such that an appearance in the child dependency proceeding constitutes an appearance in the parental termination proceeding. A court should be reluctant to terminate parental rights without the parent being heard, despite the parent's delay in participation. I also dissent, based upon *In re Dependency of C.R.B.*, 62 Wn. App. 608, 615, 814 P.2d 1197 (1991) because the trial court did not enter sufficient findings of fact to terminate Maquel Ames' parental rights.

PROCEEDING

Maquel Ames is the mother of S.I. and D.D., respectively 10 and 8 years old. Both children are the subject of this termination action.

In July 2011, the Department of Social and Health Services (DSHS) filed a dependency petition with respect to S.I. and D.D. Maquel Ames, through appointed counsel, appeared in the dependency action. The court found the children dependent and entered an agreed order of dependency on October 4, 2011. The parenting deficiencies for the mother included substance abuse, mental health issues, and an inability to meet the physical and emotional needs of her children. Among other problems, the family, including the father of one of the children, lived in a homeless camp. That father has been convicted of child rape.

As part of the dependency proceeding, court orders demanded that Maquel Ames participate in chemical dependency screening, random urinalysis and blood alcohol (UA/BA) monitoring, mental health treatment, parenting assessment, individual counseling, family therapy, and medication management. According to DSHS, Ames sporadically participated in these programs. One urinalysis tested positive for amphetamine and methamphetamine. She generally missed review hearings, and, in August 2012, the trial court found her noncompliant for failing to complete her chemical dependency screening, failing to participate in outpatient treatment and individual counseling, and failing to undergo urinalysis. According to Maquel Ames, she participated in services, visited her children regularly, and appeared at review hearings

2

either personally or through her court-appointed attorney.

The trial court scheduled a permanency planning review hearing for January 3, 2013. Prior to that review hearing, in October 2012, DSHS filed a petition for termination of the parent-child relationship. Kathleen Marquez, a social worker, avers by affidavit that she personally served, on October 24, 2012, Ames with the petition as well as a notice and summons to appear at 9:00 a.m., on December 6, 2012. The notice explained that the purpose of the hearing was to hear and consider evidence on the petition. Maquel Ames testified she did not recall receiving the petition. In November 2012, Ames visited the children. Ames did not appear for the hearing on December 6, 2012.

Maquel Ames testified that she was not aware that the petition was to terminate her parental rights, that a hearing was set, and that she needed to apply for a public defender, testimony that may be inconsistent with her claim she does not recall receiving the petition. During this time frame, she was homeless. Despite the social worker being able to find and serve the petition upon her, DSHS did not remind Ames of the hearing, explain to her the importance of the hearing, or ensure that counsel represented her at any default hearing. DSHS claims it sent a copy of the petition for termination to Maquel Ames' dependency proceeding counsel. Because of Ames' failure to appear on December 6, DSHS filed, on December 13, 2012, a motion for default, and the trial court entered the default order the same day. DSHS has no record of sending the motion for default to dependency counsel.

3

In late December 2012, Maquel Ames learned of the default order and requested appointment of counsel. She attended the January 3, 2013, dependency review hearing as scheduled. The review hearing order noted that Ames defaulted on the termination petition on December 13, 2012. The order observed that a hearing to vacate the default order and to set a relinquishment hearing could be scheduled in the future. On January 3, 2013, the trial court appointed the Office of the Spokane County Public Defender to represent Ames in response to the termination petition. On that same day, the same public defender, who represented Ames in the dependency action, appeared as counsel for Ames.

Maquel Ames testified that DSHS told her she could vacate the default order only by relinquishing her parental rights. She further testified that she delayed contacting appointed counsel due to an unsuccessful attempt to obtain private counsel to handle the matter, a claim possibly inconsistent with her other testimony.

Maquel Ames contacted appointed counsel in March 2013. On March 4, 2013, another assistant public defender substituted as counsel for Ames. On March 25, Ames filed a motion to vacate the default order. In an affidavit supporting the motion to vacate, Ames stated she wishes to change her life and make progress in parenting. She declared she wishes to contest termination. The trial court denied Ames' motion to vacate.

The trial court conducted a default termination hearing on May 23, 2013, without Maquel Ames or any counsel for Ames being present. The hearing lasted from 10:13:50 a.m. to 10:18:49 a.m. Social worker Kathy Marquez answered questions that repeated

4

statutory requirements for termination of parental rights. No one cross-examined

Marquez. Marquez's entire testimony follows:

> PRAHL: Would you state your name and spell your last name for the record?
> MARQUEZ: Kathleen Marquez, M A R Q U E Z.
> PRAHL: What's your business address?
> MARQUEZ: 1313 N. Atlantic, Suite 2000, Spokane, WA 99201.
> PRAHL: Who is your employer?
> MARQUEZ: I work for Children's Services.
> PRAHL: How long have you worked there?
> MARQUEZ: Five years.
> PRAHL: What's your educational background?
> MARQUEZ: I have a bachelor's of arts in education and a master's degree in social work.
> PRAHL: Are you currently assigned to [D.D.] and [S.I.]?
> MARQUEZ: I am.
> PRAHL: Are you familiar with the records and files for these children?
> MARQUEZ: Yes.
> PRAHL: And what is the status of the parent's paternal interests regarding these children?
> MARQUEZ: The paternal interests as well as the other father have been defaulted.
> PRAHL: Okay and the mother?
> MARQUEZ: Defaulted as well.
> PRAHL: Okay, are these children dependent?
> MARQUEZ: Yes.
> PRAHL: And when were they made dependent?
> MARQUEZ: July 27th, 2011.
> PRAHL: And could you give the court an overview of the reason for the dependency?
> MARQUEZ: Yes, the primary issues or reasons for the dependency were ongoing negligent treatment of the children, being left in the care of a registered sex offender and ongoing concerns about drug use.
> PRAHL: Was a disposition order entered?
> MARQUEZ: Yes.
> PRAHL: As to the mother, when was that entered?
> MARQUEZ: October 4th, 2011.
> PRAHL: And what about [S.I.'s] father, Jake is he?

MARQUEZ: Yes.

PRAHL: Was he defaulted in the dependency?

MARQUEZ: Yes.

PRAHL: Okay, have you ever had any contact with him?

MARQUEZ: No.

PRAHL: What services were offered or provided to the mother?

MARQUEZ: Family preservation services, parent education, family therapy, UA testing, chemical dependency assessment as well as treatment, mental health assessment, a psychological evaluation and individual counseling.

PRAHL: Can you describe her progress and participation in those services?

MARQUEZ: Um, Ms. Ames was marginally, um, compliant in services with no progress reported by providers.

PRAHL: Okay and were, did the, did Mr. [I.] or any other paternal interest ever contact you about services?

MARQUEZ: No.

PRAHL: Have all the court ordered services been offered or provided?

MARQUEZ: Yes.

PRAHL: Are there any other services reasonable, reasonably available in the community capable of correcting parental deficiencies in the foreseeable future?

MARQUEZ: No.

PRAHL: And do you, describe the mother's contact with the children.

MARQUEZ: Um, prior to November of 2012, her contact was sporadic through supervised visitation. That eventually went to therapeutic visitation where there continued to be concerns and several missed appointments and visits.

PRAHL: Do you know when her last visit was?

MARQUEZ: It was in November 2012.

PRAHL: What is the likelihood that conditions will change so the children could be returned to a parent in the near future?

MARQUEZ: Very unlikely.

PRAHL: And why is that?

MARQUEZ: Mom has demonstrated a significant pattern of failure to engage or make progress in her services.

PRAHL: Is it necessary to terminate the parent-child relationship so these children can be part of a stable and permanent home?

MARQUEZ: Yes.

6

PRAHL: What is the department's plan for a permanent home for the children?

MARQUEZ: The children have been placed together in an adoptive home.

PRAHL: In your opinion is termination of parental rights in these children's best interest?

MARQUEZ: Yes.

PRAHL: Are the allegations in the termination petition true and correct to the best of your knowledge?

MARQUEZ: Yes.

PRAHL: Are these children Indian children?

MARQUEZ: No.

PRAHL: Do you believe any of the parents to be a member of the military?

MARQUEZ: No.

PRAHL: And do these children have any siblings?

MARQUEZ: They do.

PRAHL: And do they have any contact with that sibling?

MARQUEZ: They did have contact with one half-sister and that hasn't happened since mom stopped visitation all together, but, um, the adoptive parents are willing to work something out with the father that allows contact.

PRAHL: I don't have any other questions, Your Honor.

COURT: Okay.

PRAHL: I would just request that the petition be granted.

COURT: I will grant the petition.

Report of Proceedings (May 23, 2013) at 1-5.

The trial court entered corresponding findings of fact and conclusions of law and ordered termination.

The findings of fact, in relevant part, read:

IV.

[D.D.] has been found to be dependent under Spokane County Juvenile Court Cause No. 11-7-01549-4. [S.I.] has been found to be dependent under Spokane County Juvenile Court Cause No. 11-7-01548-6. Disposition orders have been entered pursuant to RCW 13.34.130. The

7

child has been removed from the custody of the parent(s) for at least six months pursuant to a finding of dependency under RCW 13.34.030.

V.

Services court-ordered under RCW 13.34.130 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting parental deficiencies within the foreseeable future have been offered or provided including: Chemical dependency screening, random UA/BA monitoring, mental health treatment, parenting assessment, individual counseling, family therapy, and medication management.

VI.

There is little likelihood that conditions will be remedied so that the child can be returned to the parent(s) in the near future.

VII.

The parent(s) is currently unfit to parent the child.

VIII.

Continuation of the parent-child relationship clearly diminishes the child's prospects for early integration into a permanent and stable home.

IX.

It is in the child's best interests to terminate the parent-child relationship.

. . . .

XII.

The allegations in the termination petition filed herein are true and correct and adopted as a Finding of Fact.

Clerk's Papers (CP) at 68-69.

## LAW AND ANALYSIS

### Appearance and Default Order

The first question on appeal is whether the trial court should have vacated the order of default and allowed Maquel Ames to participate in the trial on the merits to terminate her parental rights. A more specific issue is whether DSHS needed to give notice of its motion for default to Ames. Both the majority and I resolve this question, in part, by addressing whether a dependency proceeding is a case separate from a parental

termination proceeding such that an appearance in the dependency proceeding qualifies the parent to receive notice of a default hearing in the termination proceeding. Unlike the majority, I conclude the two proceedings have enough similarity to be treated as one case. I also conclude that, because of a fundamental constitutional right being at stake, we should resolve any doubt as to whether the two proceedings are one case in favor of the parent.

Maquel Ames maintains that she was not given five days' notice, as required by CR 55, before the trial court entered the order of default. She also maintains that the termination of her parental rights by default violated procedural due process, and that the court's denial of her motion to vacate the default order constituted an abuse of discretion. DSHS agrees it did not serve Ames notice of the default hearing, but contends no notice was needed since Ames did not make an appearance in the termination proceeding.

According to JuCR 1.4(a), the Superior Court Civil Rules apply in child dependency and parental termination proceedings when not inconsistent with the Juvenile Court Rules and applicable statutes. Since I find no contradictory Juvenile Court Rule or statute, I begin my analysis with CR 55. CR 55 reads:

> (a) **Entry of Default.**
> (1) *Motion.* When a party against whom a judgment for affirmative relief is sought has failed to appear, plead, or otherwise defend as provided by these rules and that fact is made to appear by motion and affidavit, a motion for default may be made.

9

In turn, CR 55(a)(3) provides:

> *Notice.* Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion. Any party who has not appeared before the motion for default and supporting affidavit are filed is not entitled to a notice of the motion, except as provided in rule 55(f)(2)(A).

Under CR 55(a)(3), if a party has "appeared" before a motion for default has been filed, that party is entitled to notice of the motion before the trial court may enter a valid default order. *Smith v. Arnold*, 127 Wn. App. 98, 103, 110 P.3d 257 (2005). Consequently, if a defendant has appeared but not given proper notice prior to entry of the order of default, the defendant is entitled to vacation of the default judgment as a matter of right. *Tiffin v. Hendricks*, 44 Wn.2d 837, 847, 271 P.2d 683 (1954); *Gutz v. Johnson*, 128 Wn. App. 901, 912, 117 P.3d 390 (2005), *review granted*, 156 Wn.2d 1017, 132 P.3d 734 (2006); *Prof'l Marine Co. v. Those Certain Underwriters at Lloyd's*, 118 Wn. App. 694, 708, 77 P.3d 658 (2003); *Colacurcio v. Burger*, 110 Wn. App. 488, 497, 41 P.3d 506 (2002); *In re Marriage of Daley*, 77 Wn. App. 29, 888 P.2d 1194 (1994); *Shreve v. Chamberlin*, 66 Wn. App. 728, 731, 832 P.2d 1355 (1992). If the default order is void, the court need not decide whether the motion to vacate is brought within a reasonable time, and whether the defendant has a defense to the claim. *Colacurcio*, 110 Wn. App. at 497; *Leen v. Demopolis*, 62 Wn. App. 473, 477-78, 815 P.2d 269 (1991). The court has a nondiscretionary duty to vacate a void judgment, and judgment must be vacated regardless of the lapse of time. *In re Dependency of A.G.*, 93 Wn. App. 268, 276,

968 P.2d 424 (1998); *Allstate Ins. Co. v. Khani*, 75 Wn. App. 317, 323, 877 P.2d 724 (1994).

I address whether Maquel Ames "appeared in the action for any purpose," qualifying her for notice before the default order was entered. Ames does not rely on an informal appearance, but the formal appearance made in the dependency proceeding. Nevertheless, it is well accepted that informal acts may constitute an appearance. *Prof'l Marine Co.*, 118 Wn. App. at 708; *Colacurcio*, 110 Wn. App. at 495.

Default judgments are disfavored because it is the policy of the law that controversies be determined on the merits rather than by default. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979); *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960); *Colacurcio*, 110 Wn. App. at 494. The fundamental guiding principle

> "should be whether or not justice is being done. Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome."

*Griggs*, 92 Wn.2d at 582 (quoting *Widicus v. Sw. Elec. Coop., Inc.*, 26 Ill. App. 2d 102, 109, 167 N.E.2d 799 (1960)). Because default judgments are disfavored, the concept of "appearance" is to be construed broadly for purposes of CR 55. *Colacurcio*, 110 Wn. App. at 494-95; *City of Des Moines v. $81,231 in United States Currency*, 87 Wn. App. 689, 696, 943 P.2d 669 (1997).

11

Because of the nature of a parental termination proceeding, a court should abhor a default and construe an appearance broadly to the extreme. A parent holds a fundamental liberty interest, protected by the Fourteenth Amendment, in the care, custody and control of a child. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer v. Neb.*, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923). Courts undertake a grave responsibility when they deprive parents of the care, custody and control of their natural children. *In re Welfare of Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973). Therefore, terminating parental rights is one of the severest of state actions and implicates fundamental interests. *In re Welfare of J.M.*, 130 Wn. App. 912, 921, 125 P.3d 245 (2005). The child also has an interest in preventing the erroneous termination of its relationship with its natural parents. *Santosky*, 455 U.S. at 765.

State intervention to terminate the relationship between a parent and his child must be accomplished by procedures meeting the requisites of the due process clause. *Santosky*, 455 U.S. at 753, 768; *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 37, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). Because of the constitutional interests at stake in a termination proceeding, parents are afforded greater due process rights than in dependency proceedings or other proceedings to determine the custody or placement of children. *In re Welfare of R.H.*, 176 Wn. App. 419, 425, 309 P.3d 620 (2013).

My dissent principally relies on this court's decision in *Gage v. Boeing Co.*, 55 Wn. App. 157, 776 P.2d 991 (1989) in which we held that an appearance in one

proceeding constitutes an appearance in a related proceeding. Gary Gage filed two separate industrial injury claims with the Department of Labor and Industries. In each case, Gage's employer, Boeing, prevailed before the Board of Industrial Insurance Appeals (Board). Gage filed separate appeals in superior court. When Boeing failed to respond by filing notices of appearance as required by RCW 51.52.110, Gage sought and was granted default judgments in both cases. Gage did not notify Boeing of the default proceedings. The trial court eventually granted Boeing's motions to vacate the default judgments and Gage appealed.

The parties in *Gage* framed the issue on appeal as whether Boeing counsel's failure to file a notice of appearance pursuant to the statute constituted a "mistake" or "excusable neglect" sufficient to justify vacation of the default judgments pursuant to CR 60(b)(1). This court reframed the question as whether Boeing was entitled to notice of the default proceedings because of its appearance in the proceeding before the Board. This court affirmed the vacation of the default judgments noting that defaults are disfavored and that we broadly construe what constitutes an appearance. Boeing's informal appearance resulted from appearing and vigorously contesting Gage's claims through the administrative process. Although the appeal to the superior court initiated a new case where Gage was entitled to de novo review, the appeal was a continuation of the administrative proceeding.

*Gage v. Boeing* contains factors absent in our appeal that are favorable to finding an appearance by Boeing. Boeing energetically defended against Gage's claims, such

13

that Gage should have expected a defense on appeal. The appeal had the same exact facts and issues at stake.

Some considerations favor finding an appearance in the instant case more than finding an appearance in *Gage v. Boeing*. Boeing, unlike Maquel Ames, had the sophistication and resources to vigorously litigate. After filing his appeal, Gage could have concluded that Boeing finally agreed his claims were valid and did not wish to resist the appeal and, thus, no notice of the default motion was prejudicial to Boeing. Similar to *Gage v. Boeing*, there is substantial overlying of facts and issues between Maquel Ames' dependency proceeding and her termination proceeding.

Maquel Ames participated in the dependency proceeding and agreed to the dependency. Her participation put DSHS on notice that she may wish to participate in the termination proceeding. Her agreeing to a dependency does not mean she would agree to a termination, since the termination forever erases any care and companionship with the child. In November 2012, Ames visited her children, an event showing a desire of continued companionship with the children.

DSHS sent Maquel Ames' counsel from the dependency proceeding the petition for termination because it knew she would likely represent Ames in the termination proceeding. Notice to counsel illustrates the similarity between the two proceedings. DSHS does not know and has no record of sending the motion for default to Ames' dependency counsel.

14

In *In re Dependency of C.R.B.*, 62 Wn. App. at 619, we emphasized differences between a dependency and a termination of parental rights. But we employed the emphasis in order to vacate a default order and to protect the parent's rights to her child.

Similarities may predominate over dissimilarities when comparing a dependency proceeding with a termination proceeding. Dependency and termination are addressed in the same code, chapter 13.34 RCW, and some of the sections in the statute overlap between the two proceedings. Both proceedings involve the same legislative purpose. RCW 13.34.020. The same definitions of terms governs both proceedings. RCW 13.34.030. A law enforcement officer is entitled to immunity from suits involving either proceeding. RCW 13.34.055. A statute declaring rights of parents applies to both a dependency proceeding and a termination proceeding. RCW 13.34.090. The trial court appoints a guardian ad litem for the child in each proceeding. RCW 13.34.100. Both proceedings may be closed to the public. RCW 13.34.115. Only a party to the dependency proceeding may seek termination of parental rights. RCW 13.34.180(1). A termination proceeding may be filed only after a dependency. RCW 13.34.180(1)(a). The petition to terminate parental rights must conform to the petition for child dependency. RCW 13.34.180(1). Termination of parental rights in Washington State is a three-step process, including the dependency proceeding. *In re Dependency of K.N.J.*, 171 Wn.2d 568, 576, 257 P.3d 522 (2011).

Both the dependency proceeding and the termination proceeding focus on parental sufficiency. RCW 13.34.030(6); RCW 13.34.180. The Assistant Attorney General who

15

handles the dependency proceeding usually, but not always, conducts the termination proceeding. The same defense attorney typically represents the parent in each proceeding. The two proceedings have different cause numbers, but cause numbers are unimportant and emphasizing separate clerk files for each proceeding flaunts form over substance. If the two proceedings employed the same cause number there would be no argument that an appearance had already been filed and notice of the default hearing was needed in the termination proceeding.

In this and other termination proceedings, DSHS argues for a streamlined, if not hurried, process in order to benefit the children who need permanency and adoption. Indeed, RCW 13.34.020 encourages a speedy resolution of proceedings. Critics of my dissent will also contend that I do not understand the realities of the situation, which realities include large numbers of incompetent parents and a lack of resources and time to spend a week or more in trial on each termination proceeding.

Still I question whether a few months of delay caused by a vacation in a default order endangers permanency. The child will likely live with the potential adopting parent or parents, if one or more are in existence, during the pendency of the termination proceeding. Many children are of the age that they do not know of pending adoption proceedings. In the event DSHS prevails in the termination proceeding, the child remains with the adopting parent. If the parent prevails, it is because the child and parent deserve continued connection. Again, we deal with a constitutional right and the courts should

16

devote whatever resources are needed to protect constitutional rights. Constitutional rights are not conditioned upon time, but are timeless.

At oral argument, DSHS was asked what harm it or the children would have suffered if the court had vacated the order of default and allowed Maquel Ames to participate in the termination trial. DSHS answered that, if the termination trial were contested, the trial would be assigned to a superior court judge rather than a court commissioner. In turn, according to DSHS, the trial could be delayed as much as nine months. I accept the fact that a contested trial will be assigned to a superior court judge and there will be some delay. I disagree that any delay will be nine months. A parental termination trial receives the same priority on the trial calendar as a criminal trial, and a superior court judge can and should be made readily available. Regardless, we are dealing with a precious fundamental constitutional right dearer than life itself. The process should not be rushed.

DSHS seeks to terminate rights due to a parent's obstacles to good parenting. Those obstacles in Maquel Ames' life include homelessness and drug abuse. DSHS fails to recognize that these same obstacles impair the parent's response to a legal proceeding. DSHS could and should respond to these obstacles by taking extra steps to insure that the parent is represented by counsel and given a fair hearing.

DSHS contends that, if it needed to provide notice of a motion for default, it provided that notice in the summons accompanying the termination petition. The summons directed Maquel Ames to appear at a hearing on December 6, 2012. The notice

also warned Ames that, if she did not appear, "the court may enter an order in [her] absence permanently terminating [her] parental rights." CP at 8.

As stated earlier, CR 55 controls the default order procedure. Nothing in the rule allows the plaintiff to schedule a default hearing, before the default. Instead, CR 55(a)(1) permits the motion to be made only after the default. Nothing in the rule allows the plaintiff to avoid giving a copy of the motion for default and notice of issue for the default hearing when the defendant has appeared. CR 55(a)(3) demands, "Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion."

Since I would rule that the order of default must be vacated for lack of notice of the default motion to Maquel Ames, I do not address whether there is good cause to vacate otherwise. Since I would rule based upon state rules of appearance and notice, I do not address Ames' argument that the default order violated her constitutional due process rights.

I make no judgment as to the merits of the parental termination action. What little evidence we are given shows Maquel Ames to be an irresponsible and incompetent mother. I also question Maquel Ames' claim that she now wishes to change her lifestyle, receive government assistance and training, and adequately care for her children. But allowing Maquel Ames the opportunity to participate in an evidentiary hearing is first in priority. Incompetent parents are entitled to procedural rights and are in more need of those rights. The extra time given for a full evidentiary hearing may not result in a

18

different outcome in this case, but it could in another case. Sometimes events surprise us, and the inevitable termination does not come to fruition.

## Sufficiency of Evidence

A second basis for dissenting is the lack of sufficiency of evidence to prove by clear and convincing evidence the grounds for termination of Maquel Ames' parental rights. For this basis, I rely on *In re Dependency of C.R.B.*, 62 Wn. App. at 618-19, in which we held that testimony, during a default hearing, that parrots the statutory requirements of termination and corresponding findings of fact are not sufficient.

In *In re Dependency of C.R.B.*, DSHS could not find the mother, Tina Brown, to serve her with the termination petition, so DSHS published notice. Brown did not appear at the default hearing, but her attorney appeared on her behalf. I do not know how Brown hired or was appointed an attorney, but suspect counsel had been Brown's attorney in the dependency proceeding. Counsel informed the court that she had not had contact with Brown for three months, at which earlier time Brown expressed an interest in the child returning to her care and her willingness to participate in court-ordered services. Counsel requested that the case proceed to trial on the date already assigned five months into the future rather than the trial court entering an order of default. The trial court, nevertheless, entered an order of default and order of termination of parental rights, after listening to the testimony of Brown's caseworker. The caseworker testified:

> Q: How long have you served as a Caseworker on this particular case?
> A: Since December of 1989.

19

Q: Has this child been found to be dependent?

A: Yes, he has.

Q: Has the Court entered a Dispositional Order?

A: Yes, [it has].

Q: Has the child been removed, or will at the time of this hearing have been removed from the custody of the parent for a period of at least six months, pursuant to a Dependency Finding?

A: Yes, he has.

Q: Have the services ordered been offered or provided and all necessary services reasonably available and capable of correcting the parental deficiencies within the foreseeable future have been offered or provided?

A: Yes, they have.

Q: Would you say there's little likelihood the conditions will be remedied so that the child can be returned to the parent in the near future?

A: I believe there's little likelihood as the parents have not accepted any services at this time.

Q: Would continuation of this parent-child relationship clearly diminish the child's prospects for early integration into a stable, permanent home?

A: They would.

Q: Would termination of the parent-child relationship be in the best interest of this child?

A: I believe it would.

*In re Dependency of C.R.B.*, 62 Wn. App. at 612.

On appeal, in *In re Dependency of C.R.B.*, DSHS, as it always does, argued that lengthy legal proceedings create extended uncertainty, which infringes on the child's interest in having stable relationships. Thus, according to DSHS, a default judgment is a remedy that should be available. We agreed that a default judgment could be entered, but held that the termination hearing was insufficient. RCW 13.34.180 and .190 establishes procedures required before terminating parental rights. We wrote:

When [DSHS] must prove its case by clear, cogent, and convincing evidence, the evidence must be more substantial than that required under a preponderance of the evidence standard. Required findings must be "sufficiently specific to permit meaningful review." Although the degree of particularity required depends on the circumstances of each case, at minimum, the findings should indicate the factual bases for the ultimate conclusions. The court may look to the entire record to determine whether the evidence is sufficient to support the court's findings.

The "evidence" presented by Brown's caseworker at the hearing consisted of legal conclusions parroting the language of the statutory requirements found in RCW 13.34.180. Aside from the caseworker's testimony, the only other evidence entered into the record at the termination proceeding was that Brown had been served by various means and had not responded.

The court's "findings of fact" follow the testimony of Brown's caseworker and, accordingly, consist only of legal conclusions. Since the court's conclusions are not supported by facts and do not satisfy the mandate of proof by "clear, cogent, and convincing" evidence, they do not satisfy the requirements of RCW 13.34.180 & .190. Moreover, they are not "sufficiently specific to permit meaningful review." We thus conclude that the court failed to comply with RCW 13.34.180 and .190.

The court's failure to satisfy the statutory requirements may not be corrected by relying on evidence presented at the dependency hearings.

*In re Dependency of C.R.B.*, 62 Wn. App. at 618-19 (citations omitted).

I would be remiss in discussing the insufficiency of evidence without mentioning *In re Dependency of E.P.*, 136 Wn. App. 401, 407, 149 P.3d 440 (2006), *review granted*, 161 Wn.2d 1014, 171 P.3d 1057 (2007). Ms. P. argued the trial court erred by holding the termination trial in her absence because a one-sided nature of the hearing made the risk of error unconscionably high. Ms. P. did not attend the termination hearing and the trial court allowed her counsel to withdraw, at the beginning of the hearing, since she had not communicated with him for months. On appeal, Ms. P. also argued that the trial court's findings and conclusions did not support termination of her parental rights

because she was not present and could not present evidence. This division held, however, that the trial court conducted a meaningful hearing. The trial court took testimony, reviewed the documentary evidence, and made detailed findings on the substantive issues required to be proved by DSHS under RCW 13.34.180 and .190. The record reflected the court considered the case on its merits and held DSHS to the requisite burden of proof on all issues. The decision does not disclose the extent of the testimony or the findings of fact.

Absent a knowledge of the extent of the testimony and findings of fact in *In re Dependency of E.P.*, I consider our facts more similar to the facts in *In re Dependency of C.R.B.* The testimony of Kathy Marquez may be more extensive than the testimony of the *C.R.B.* caseworker, but only barely. Marquez provided few details concerning Maquel Ames and her parenting ability since she was not asked for details. Most of Marquez' testimony consisted of legal conclusions that recited statutory requirements. The findings of fact also lacked detail and repeated statutory language.

The findings of fact incorporated the allegations in the petition to terminate parental rights. Those allegations provide more detail than the trial testimony. But Kathy Marquez did not testify to the facts. She merely replied, in response to a leading question, that the allegations in the petition, to the best of her knowledge, were true.

The trial court's factual findings must be more than a recitation of allegations. *In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599 (2002). The appellate court, in *Anderson*, reversed an order terminating parental rights, in part, because the findings of

fact repeated allegations of the government's petition. Findings of fact that merely adopt or disaffirm allegations in the pleadings are not findings of fact and are reversible error. *Martin v. Baker*, 43 Cal. App. 3d 1049, 1054, 118 Cal. Rptr. 238 (1974).

Maquel Ames did not raise the issue of the sufficiency of evidence or findings in her appeal brief. Therefore, the State did not address the issue. This court should not raise new issues without first giving the parties the chance to brief them. RAP 12.1. RAP 12.1(b), however, allows us to address an issue we deem important after notifying the parties and granting them an opportunity to present written argument. Unfortunately, the majority declines to ask the parties for written arguments on this important issue. This court thereby fosters DSHS' rush to judgment.

I respectfully dissent from my colleagues. Maquel Ames was entitled to be present with counsel at the evidentiary hearing before the court severed the revered relationship between parent and child. The perfunctory nature of that hearing was insufficient to terminate parental rights. Justice is not achieved by a hastened process any more than by continuing delays.

_____
Fearing, J.