IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | No. 32638-1-III |
| L.R.C., | ) | |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

KORSMO, J. — RC, mother of LRC, challenges the default termination of her parental rights. We conclude that she had notice of the hearing and lacked a good excuse for vacating the subsequent default judgment against her. Accordingly, we affirm.

## FACTS

In late 2012, RC gave birth to a daughter, LRC. At the time, RC tested positive for methamphetamine, but voluntarily agreed to services and retained custody of LRC. Over the next several months, medical staff became concerned by RC's interactions with her daughter and her failure to bring the child to a number of medical examinations. When the two were located, LRC had developed an infection and was placed in protective custody. The Department of Social and Health Services (DSHS) then brought a dependency petition. The court entered a dependency order on April 19, 2013.

At the start of dependency, a psychologist evaluated R.C. and determined that it would be unlikely that she could adequately protect and nurture a child without two years of therapy. She was also offered a parenting assessment and, following additional positive tests for controlled substances, referred for a chemical dependency assessment. While R.C. consistently visited her daughter throughout the dependency, she refused to participate in any of the offered services. DSHS subsequently petitioned for termination on September 4, 2013.

On October 7, the social worker assigned to the case, Dolores Cantu, met with R.C. and gave her the termination petition and summons. Ms. Cantu explained to R.C. that her parental rights would be terminated if she failed to appear at the termination hearing on October 28. Ms. Cantu also offered to give R.C. a ride to the hearing. On the 28th, R.C. failed to attend. The court held an evidentiary hearing on November 20 and entered a termination order two days later.

Five months later R.C. set about bringing a motion to vacate the default judgment.[1] Along with the motion, she submitted a declaration claiming to have continued participating in parenting services, to have completed some parenting education, and to have provided clean drug tests for those five months. She also asserted

---

[1] She met with her attorney on April 28, 2014. All the necessary papers were prepared at that time. However, the motion was not actually filed until June.

2

that she was unable to prepare the motion any sooner because she lives in Wapato and April was the first opportunity for her to get in to Yakima in order to sign a declaration. The trial court denied the motion. She then appealed to this court.

## ANALYSIS

R.C. challenges the trial court's denial of the motion to vacate the default judgment. Additionally, she argues for the first time on appeal that the termination order was entered in violation of her due process rights and is void for defective service and for lack of notice under CR 55. We conclude that these contentions are without merit and will first treat the motion to vacate before turning to her additional arguments.

*Motion to Vacate*

Well settled standards govern the resolution of this appeal. A denial of a motion to vacate a default judgment will be affirmed absent an abuse of discretion. *Pedersen v. Klinkert*, 56 Wn.2d 313, 314, 352 P.2d 1025 (1960). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). A trial court will grant a motion to vacate a default judgment where the moving party has shown that (1) there is substantial evidence to support a prima facie defense to the claims asserted by the opposing party, (2) the moving party's failure to appear in the action was occasioned by mistake, inadvertence, surprise, or excusable neglect, (3) the moving party acted with due diligence after notice

3

of the entry of default, and (4) no substantial hardship will result to the opposing party. *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968).

While R.C. presented some limited evidence that she had engaged in services and was working to correct her parental deficiencies, she failed to make any showing under the remaining factors. Her only excuse for not appearing at the termination hearing was that she did not understand its import, despite multiple written warnings and a direct verbal warning by Ms. Cantu, informing her of the consequences of failing to attend.

She learned of the termination within the week and contacted her attorney to find out how to go about vacating the judgment. She then waited five months before acting, ostensibly because it took that long before she was able to travel the 14 miles to her attorney's office in order to sign the necessary paperwork. This does not evince due diligence. *See, e.g., In re Welfare of S.I.*, 184 Wn. App. 531, 544-545, 337 P.3d 1114 (2014), *review denied*, 183 Wn.2d 1002 (2015); *In re Estate of Stevens*, 94 Wn. App. 20, 35, 971 P.2d 58 (1999).

Furthermore, in the intervening time L.R.C. has continued to age and was placed in a permanent home with a family that is near to finalizing an adoption.[2] Given all of

---

[2] Although L.R.C. is not an opposing party, she is a party to the action. Because of the nature of a termination, it is appropriate to consider the potential hardship to the child in addressing a motion to vacate a default judgment.

4

this, the trial court's denial of the motion comports with the law and was not an abuse of discretion.

*Due Process*

R.C. raises a due process argument for the first time on appeal. Thus, in order for us to address the issue, it must be a manifest constitutional error. RAP 2.5(a). Because of the substantial rights at issue in a termination proceeding, due process requires an evidentiary hearing on the merits of the case to establish the statutory requirements for termination prior to any default judgment. *S.I.*, 184 Wn. App. at 542; *In re Dependency of C.R.B.*, 62 Wn. App. 608, 616, 814 P.2d 1197 (1991). In order to terminate parental rights, the state must present evidence establishing that (1) the child has been found to be dependent, (2) the court has entered a dispositional order, (3) the child has been removed from the custody of the parent for at least six months, (4) all the necessary services have been afforded to the parent to correct the parental deficiencies, (5) there is little likelihood of remedying the parental deficiencies, and (6) continuation of the parent child relationship clearly diminishes the child's prospects of permanent placement. RCW 13.34.180(1).

Relying on *C.R.B.*, R.C. asserts that the termination hearing was deficient because the testimony merely "parroted" the statutory language. In *C.R.B.*, the hearing consisted essentially of the caseworker giving legal conclusions as to whether each statutory factor was satisfied. *C.R.B.*, 62 Wn. App. at 618-619. That approach failed because the court

must be presented with factual evidence to support its conclusions. *Id.* Unlike *C.R.B.*, here the evidence meets the statutory requirements.

The social worker, Ms. Cantu, testified that the dependency orders were entered on April 19, 2013 and that L.R.C. had been outside her mother's custody since that date. She testified that R.C. suffered from a chemical dependency and mental health issues, and that remedial services had been provided in the form of a psychological examination, psychological treatment, parenting and anger management classes, chemical dependency treatment, and random urinalysis. Ms. Cantu then testified that R.C. completed her first chemical dependency assessment, but following positive tests for methamphetamine, failed to participate in any additional assessments or treatment. Ms. Cantu then testified to her opinion concerning whether R.C. would further participate in services and whether those parental deficiencies could be rectified. Finally, the guardian ad litem testified to the present situation and best interests of L.R.C. This testimony did not merely parrot the statutory factors, but simply detailed the underlying facts necessary to support termination. Consequently, the evidence presented was sufficient to support the court's findings.

As a secondary assertion, R.C. claims that her due process rights were violated by the court's reliance on hearsay evidence. However, she has failed to show that either of these asserted errors prejudiced the proceeding in any way. In order for an asserted constitutional error to be manifest, it must cause actual prejudice, which entails having a

practical effect on the trial of the case. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009).

Pertinently, the examining psychiatrist who made the treatment recommendation did not testify at the hearing. Rather, the social worker testified based on the psychiatrist's written recommendations in the dependency file. R.C. challenges this as inappropriate hearsay evidence. However, hearsay is ordinarily objectionable because the opposing party does not have the opportunity to confront the witness. Since R.C. absented herself from the hearing, there is no identifiable consequence to admitting hearsay rather than requiring testimony from the psychiatrist.

*Service and Notice*

R.C. contends that the judgment was void for defective service because the termination petition and summons was not handed directly to her, but was instead given to the man with her at the meeting. This contention hinges entirely upon reading a handwritten word as "man," where the State argues that the word reads as "mom." However, given the surrounding context the meaning of the word is clear. Ms. Cantu stated in a declaration:

> I met and served [R.C.] that evening. She was present with a gentleman friend. I served [man/mom] the paperwork and explained *to her* again the purpose of the hearing. I informed her that if she did not appear her rights would be terminated and she indicated she would be present.

Clerk's Papers at 22 (emphasis added). Taken as a whole, this statement indicates that the papers were served directly on R.C. Furthermore, she states in her own affidavit that the papers were "handed to me." Consequently, she has failed to meet her burden of establishing by clear and convincing evidence that service was improper. *In re Dependency of A.G.*, 93 Wn. App. 268, 276-277, 968 P.3d 424 (1998).

R.C. also contends that the judgment is void because an appearance in the predicate dependency proceeding should constitute a prior appearance in the subsequent termination, so that a party is entitled to notice prior to any hearing on a motion for a default judgment per CR 55(a)(3). This court recently rejected that argument. *In re S.I.*, 184 Wn. App. at 540-542. This case also is distinguishable from *S.I.* in that R.C. did not raise the issue to the trial court in her motion to vacate.

The record here establishes that notice was sufficient under CR 55. The findings of fact on the order for termination state that R.C. was given notice of the hearing but failed to appear, and she confirms that fact in her motion to vacate and in her affidavit in support of that motion. Consequently, the judgment is not void.

Affirmed.

8

No. 32638-1-III
*In re LRC*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.